STATE of Minnesota, Respondent,

v.

George Maurel **CARROLL**, Appellant.

No. C7–01–771.

Court of Appeals of Minnesota.

Feb. 26, 2002.

Mike Hatch, Attorney General, Natalie E. Hudson, Assistant Attorney General, St. Paul, MN; and Lisa Nelson Borgen, Clay County Attorney, Moorhead, MN, for respondent.

John M. Stuart, State Public Defender, Lawrence W. Pry, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by HARTEN, Presiding Judge, RANDALL, Judge, and HANSON, Judge.

## OPINION

RANDALL, Judge.

Appellant challenges his conviction on the ground that the district court abused its discretion in excluding cross-examination, testimony, and closing argument about the victim's prior inconsistent statements that already been heard by the jury. Because we conclude that the district court abused its discretion in these exclusions, we reverse and remand for a new trial.

## FACTS

Appellant George Carroll and his wife Amanda invited Rhoedisha Annis, her husband Brian, and her daughter D.D., then 12, to move into the Carrolls' apartment temporarily. In March 1999, while the families were living together, Amanda Carroll observed appellant and D.D. lying together on a bed, fully clothed, and reported this to the police as a sexual assault. Immediately after the incident, D.D. made a *videotaped statement that no one had ever touched her inappropriately.* Based on this statement, no charges were brought against appellant.

Ten months later, in January 2000, during an investigation of neglect, *D.D. gave another videotaped statement that she had*

*been inappropriately touched by appellant and by another man.* She explained the inconsistency with this statement:

> I came here to talk * * * because, um, supposedly [appellant] was touching me in bad spots. And last time I said that no, he wasn't, but I did lie last time because I was scared to admit it. Because he knows some kids like holding stuff and like that. And then when [the counselor] finally came I finally decided that I should let it out, and I told [her] that I have been touched in the wrong spots by two people. And that's why I'm here today.

Appellant was charged with one count each of first-degree and second-degree criminal sexual conduct. During trial, the district court admitted both videotapes as evidence. Further, the district court refused the state's request that D.D.'s explanation of the inconsistency should be redacted, saying, "[I]n fairness to [appellant], I'll let it in for impeachment purposes." But, having admitted the inconsistent tapes, the district court then refused to allow appellant's counsel to cross-examine D.D. on the inconsistency, excluded the testimony of other witnesses on the inconsistency, and prohibited any reference to the inconsistency in closing argument. The jury found appellant guilty on both counts.

## ISSUE

Did the district court abuse its discretion in excluding cross-examination of the victim, testimony from other witnesses, and closing argument reference to the inconsistencies in the victim's statements?

## ANALYSIS

■ If the district court erred either in admitting or in excluding evidence, a reviewing court assesses whether the error was harmless, asking what affect the error had on the jury's verdict and whether the jury's verdict was attributable to the error. *See State v. King*, 622 N.W.2d 800, 811 (Minn.2001).

■ The district correctly admitted both of D.D.'s videotaped statements and correctly refused to redact her explanation of the inconsistency. The district court was right in saying, "In fairness to [appellant], I'll let it in for impeachment purposes." However, the district court then used its admission of both videotapes as the basis for excluding cross-examination of D.D. on the subject. "[Cross-examination is] not necessary because [D.D.] explains * * * on the tape as to why she did that." Thus, the district court allowed the jury to hear D.D.'s statements that she first denied that anyone had ever touched her inappropriately and later changed her mind and said she had been "touched in the wrong spots by two people. And that's why I'm here today." So, although the jury was allowed to hear that D.D. was allegedly touched by two men, appellant was denied any right to cross-examine on this substantial inconsistency. The district court found that, because D.D. explained her inconsistency on the tape, no cross-examination was needed and allowed none. We conclude this disallowance was a substantial error that entitles appellant to a new trial.

■ In addition to its reasoning that the victim's explanation of her inconsistencies barred the need for cross-examination, the district court weighed the evidence based on the "rape shield law," Minn.Stat. § 609.347, subd. 3 (2000), prohibiting evidence of a victim's prior sexual conduct unless either the victim's consent is a defense or the prosecution introduces evi-

dence of semen, pregnancy, or disease.[1] *See also* Minn. R. Evid. 412(1) (stating the same). Appellant contends that prohibiting cross-examination of D.D. as to her inconsistent statements violated his right to due process, to confront his accuser, and to present his defense.

In certain cases the due process clause, the right to confront accusers, or the right to present evidence will require admission of evidence otherwise excluded by the rape shield law.

*State v. Friend,* 493 N.W.2d 540, 545 (Minn.1992) (citation omitted). This is such a case.

Every criminal defendant has a right to fundamental fairness and to be afforded a meaningful opportunity to present a complete defense. The Due Process Clauses of the Federal and Minnesota Constitutions require no less. The right to present a defense includes the opportunity to develop the defendant's version of the facts, so the jury may decide where the truth lies. The Confrontation Clauses of the Federal and Minnesota Constitutions serve the same purpose, affording a defendant the opportunity to advance his or her theory of the case by revealing an adverse witness's bias or disposition to lie.

To vindicate these rights, courts must allow defendants to present evidence that is material and favorable to their theory of the case. * * *

In ruling on a defendant's offer of [evidence of the victim's previous sexual conduct], the trial court considers the defendant's constitutional rights, Minn. R. Evid. 403 and 412, and the rape shield statute * * * Minn.Stat. § 609.347, subd. 3. In the event of a conflict, the defendant's constitutional rights require admission of evidence excluded by the rape shield law.

* * * *

We are constrained to interpret statutes as constitutional in purpose and effect unless a party proves otherwise beyond a reasonable doubt. Thus, when confronted with a statute susceptible to multiple interpretations, we adopt the one that stands in harmony with the Constitution, even if the alternative construction might otherwise seem a more accurate reflection of legislative intent.

Following these principles, we conclude the rape shield statute serves to emphasize the general irrelevance of a victim's sexual history, not to remove relevant evidence from the jury's consideration.

*State v. Crims,* 540 N.W.2d 860, 865–67 (Minn.App.1995) (quotation and citations omitted), *review denied* (Minn. Jan. 23, 1996). D.D.'s admission that she changed her story as to appellant's alleged inappropriate touching was highly relevant to her credibility, and highly relevant to the jury's evaluation of that credibility, and to the jury's consideration of whether the state had proved every essential element of the crime by proof beyond a reasonable doubt.

▮▮ In every case, the credibility of anyone who takes the stand-defendant, victim, and all other witnesses-is on trial. *See* 10 *Minnesota Practice,* CRIMJIG 3.12 (1999) (instructing that jurors are sole judges of witnesses' credibility and may consider witnesses' interest or lack of interest in outcome of case; their relationship to parties; their ability and opportunity to know, remember, and relate facts, their manner and appearance; their age

---

1. "Sexual conduct" as used in Minn.Stat. § 609.347 has been defined to include "allegations of sexual abuse." *State v. Kobow,* 466 N.W.2d 747, 750 (Minn.App.1991), *review denied* (Minn. April 18, 1991).

and experience; their frankness and sincerity, or lack thereof; reasonableness or unreasonableness of their testimony in light of all other evidence; any impeachment of their testimony; and any other factors that bear on credibility and weight); 4 *Minnesota Practice* 4, CIVJIG 12.15 (1999) (stating the same).

 The "rape shield law" is not a law in the same sense as laws prohibiting theft or laws prohibiting majority shareholders in a close corporation from taking undue advantage of minority shareholders. The rape shield law is a legislative limitation of a citizen's Sixth Amendment right to confront and cross-examine opposing witnesses. Notwithstanding enactment of the rape shield law, district courts have *always* had the right to protect witnesses from harassment and to sustain objections to questioning that is repetitious, and/or cumulative, and/or irrelevant. The rights of district courts to protect the rights of people in court and to ensure a fair and orderly trial were in place long before the rape shield law, and they are still in place. Whether the rape shield law was in place or not, district courts have the continuing power to prevent any witness from being badgered, harassed, or subjected to irrelevant or cumulative questions. Thus, in any given case, application of the rape shield law must be scrutinized to determine whether it provides or prevents a fair and orderly trial.

Both *Friend* and *Crims* upheld the exclusion of evidence pursuant to the rape shield law, and both illustrate the circumstances in which the statute was meant to apply. In *Friend,* the court excluded evidence that a victim, murdered after having intercourse with the defendant, had engaged in consensual sexual relations with someone else two weeks earlier. The defendant wanted to show that his sexual activity with the victim was consensual. However,

> [t]he evidence demonstrated that the victim had a broken nose, had a wound under her eye, and did not get up between the time of the sexual intercourse and the murder. * * * [T]he limited probative value of the evidence [of her previous sexual relations with a third party] was clearly outweighed by its potential for confusing the jury and creating unfair prejudice.

*Friend,* 493 N.W.2d at 545. Here, there was no possibility of the jury being confused by the excluded evidence because the jury already had seen D.D.'s two inconsistent videotaped statements.

In *Crims,* a defendant convicted of third-degree criminal sexual conduct (force or coercion) challenged the exclusion of evidence that the victim had previously exchanged sex for drugs. This court upheld the exclusion "[b]ecause collateral evidence of prostitution would have added nothing to Crims's consent theory nor rebutted the extensive evidence of withdrawn consent." *Crims,* 540 N.W.2d at 869. Here, evidence that D.D. had recounted directly conflicting versions of appellant's activity and had accused another of the same activity was highly probative of her credibility and critical to the jury's assessment of that credibility. The error was magnified because D.D.'s credibility was essentially the only evidence used to convict appellant. Her previous denial that anything wrong had happened to her had caused the state not to charge appellant. At that time, the state offered nothing else and took the position that D.D. had not said the touching occurred and there was no reason to go forward.

The district court relied on *Kobow,* 466 N.W.2d at 750 (finding no abuse of discretion in exclusion of evidence that victim had alleged individuals other than defen-

dant had abused her). *Kobow* is distinguishable. In that case, the defendant sought to admit the evidence of [the victim's] prior allegations of sexual abuse to impeach her credibility as a truthful witness. *However, [the victim] made no statement during direct examination* on this issue of prior allegations of abuse. Having made no such statements, [the victim] was not subject to impeachment on that issue. Had [the victim] testified that she had never alleged sexual abuse before, *then* [the defendant] may have had grounds to present evidence of her prior allegations to impeach her veracity as a witness.

*Id.* at 751 (emphasis added). Here, the jury saw one statement in which D.D. said appellant had not inappropriately touched her and another statement in which she said he had. With those two statements in evidence, due process mandates appellant have the right to impeach D.D. through cross-examination as to those inconsistent statements, and now her claim that not one man, but rather two different individuals, had inappropriately touched her.

■ We conclude the district court correctly refused to delete any part of the second videotape where D.D. admitted the inconsistencies and then tried to explain why she changed her story. However, once evidence is admitted in a trial and heard by the jury, thus giving the jury the right to consider it for whatever it is worth, we cannot fathom a case where either the state's attorney or the defen-

dant's attorney *is not allowed to refer to evidence that has been admitted!* The district court could have called both attorneys into chambers and cautioned them that this was a sensitive area, that they should go slowly and carefully, and that the court would watch closely for any abuses on cross-examination and redirect examination. But a court must allow attorneys to comment on and use *admitted evidence.*

■ If the district court had found the tapes inadmissible, it could have excluded them and that might have given rise to an appeal. But once the district court admitted both tapes, not allowing either attorney to use them as a basis for legitimate cross-examination and legitimate closing argument was an abuse of discretion. Ruling that a witness's explanation of the reason for inconsistent statements was enough for the jury to hear and that the jury make up its own mind without any right of cross-examination of the witness is directly contrary to the letter and the spirit of a defendant's constitutional right to cross-examine accusers.[2]

■ Providing the jury with evidence that D.D. had made inconsistent statements as to appellant's inappropriate touching conferred on appellant the right to cross-examine D.D. on those statements, to present witnesses who would testify as to the accuracy of the statements, and to refer to the inconsistency in closing argument.[3]

---

**2.** In all criminal prosecutions, the accused has the right * * * to be confronted with the witnesses against him. U.S. Const. amend. VI. The Minnesota Constitution, art. 1, § 6 provides for the same right.

**3.** As a separate grounds for reversal, appellant argues that the district court abused its discretion in admitting the officer's testimony of appellant's wife remark because the remark was inadmissible character evidence

within the meaning of Minn. R. Evid. 404(a). Appellant did not raise this argument to the district court, and therefore it is not properly before us. A party may not obtain review by raising the same issue under a different theory. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). Our decision to reverse on other grounds renders the issue moot. However, we note that the officer's testimony was not an attack on appellant's character precluded by Minn. R. Evid. 404(a) and that, in any

## DECISION

It was clear and substantial error to deny appellant the right to cross-examine a witness whose inconsistent statements had been admitted as evidence and shown to the jury. It was error to deny appellant the right to produce witnesses as to the veracity of those statements and error to deny appellant's counsel the opportunity to refer to the inconsistencies in closing argument.

**Reversed and remanded for a new trial.**

event, there was no reasonable probability that this testimony significantly affected the verdict because appellant himself testified to his wife's remark. *See State v. Post,* 512 N.W.2d 99, 102, n. 2. (Minn.1994) (noting "when dealing with a claim of erroneous admission of evidence [a reviewing court asks] whether there is a reasonable probability that the wrongfully admitted evidence significantly affected the verdict") (emphasis omitted).