*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0456**

State of Minnesota,
Respondent,

vs.

Marc Jonathan Knotz,
Appellant.

**Filed February 2, 2015
Affirmed
Smith, Judge**

Hennepin County District Court
File No. 27-CR-13-12154

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Mark D. Nyvold, Fridley, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Ross, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH**, Judge

We affirm the district court's denial of appellant's motion for a new trial because appellant received a fair trial and any prosecutorial misconduct was harmless.

## FACTS

On April 14, 2013, appellant Marc Knotz's ex-wife arrived at his home to exchange custody of their children, a six-year-old daughter and a two-year-old son. Knotz opened the door, and his daughter entered the house. While holding her son outside the front door, Knotz's ex-wife asked Knotz if he had a box of her belongings that she planned to take with her. Knotz grabbed the box and returned to the door. When she moved to put down her son and take the box, Knotz's ex-wife noticed that he had a gun in his hand and that it was pointed at her head. Knotz's ex-wife called 911, and police officers responded and arrested Knotz. The state charged him with making terroristic threats and second-degree assault.

At trial, Knotz's ex-wife testified that Knotz seemed "extremely intoxicated" when he pointed the gun at her head. As part of his defense, Knotz maintained that he always practices gun safety. Knotz testified that he pointed the gun at the light switch on the wall. He also testified that he had had only "three or four sips" of alcohol. During cross-examination, the state asked Knotz whether he always buys the largest bottle of his preferred liquor, a 1.75-liter bottle, at the liquor store. The district court overruled Knotz's relevancy objection.

Knotz's girlfriend testified that approximately half the time before handling firearms Knotz consumes alcohol. The district court overruled Knotz's relevancy objection.

A police officer, who responded to Knotz's ex-wife report that Knotz had pointed a gun at her head, also testified. When the prosecutor asked him what he found in

2

Knotz's bedroom, the officer replied, "We found several empty bottles of Captain Morgan in the bedroom." In response to a pretrial motion, the district court had ruled that evidence of the empty liquor bottles was inadmissible, unless the door was opened. After the officer's response, the prosecutor said, "I'll stop you right there," and the district court instructed the jury to disregard the officer's reference to liquor bottles.

Knotz also testified that he used hollow-point bullets in his firearm. The state asked whether hollow-point bullets are designed to inflict maximum damage to a target. The district court overruled Knotz's relevancy objection. Knotz agreed that hollow-point bullets are designed to expand on impact and that they inflict more tissue damage, after noting that he has not "read any studies."

During closing argument, the prosecutor summarized the evidence presented, including that Knotz drinks half the time when he handles guns, that Knotz habitually buys the largest possible bottle of his preferred liquor, and that hollow-point bullets expand on impact. The prosecutor also stated that he had verified the information about the lethality of hollow-point bullets with a Google search. Knotz objected, citing facts not in evidence. The district court overruled this objection stating, "I think the facts were in evidence. I'll leave it up to the jury to determine whether there's facts in evidence."

The jury acquitted Knotz of second-degree assault and found him guilty of making terroristic threats. Knotz moved for a new trial on the basis of prosecutorial misconduct, and the district court denied the motion.

## DECISION

### I.

Knotz argues that the prosecutor committed misconduct by focusing the jury's attention on issues that were irrelevant or unduly prejudicial, including (1) Knotz's drinking habits, (2) the empty liquor bottles found in Knotz's bedroom, and (3) the effect of hollow-point bullets. We review alleged prosecutorial misconduct for harmless error. "There are two distinct standards. If the misconduct was serious, the misconduct is harmless beyond a reasonable doubt if the verdict rendered was surely unattributable to the error. For less serious misconduct, the standard is whether the misconduct likely played a substantial part in influencing the jury to convict." *State v. Powers*, 654 N.W.2d 667, 678 (Minn. 2003) (quotations and citations omitted).

As a threshold matter, we determine that eliciting the testimony regarding Knotz's drinking habits and the empty bottles was not misconduct because the prosecutor did not intentionally seek inadmissible testimony. Knotz's objections to the testimony were overruled. A prosecutor does not commit misconduct by complying with the district court's rulings. *State v. Carroll*, 639 N.W.2d 623, 629 (Minn. App. 2002).

Knotz also argues that the prosecutor committed misconduct in his closing argument by referring to the evidence about Knotz's drinking habits. The closing argument must be viewed as a whole for alleged prosecutorial misconduct. *State v. Walsh*, 495 N.W.2d 602, 607 (Minn. 1993). Because it was not misconduct to elicit the evidence, it was also not misconduct to refer to the evidence during closing argument. *See Carroll*, 639 N.W.2d at 629 ("We cannot fathom a case where either the state's

4

attorney or the defendant *is not allowed to refer to evidence that has been admitted!*" (emphasis in original)). The district court properly allowed the state to cross-examine the girlfriend on how often Knotz drank before handling firearms because it was relevant to his defense that he practiced gun safety and knew how to safely handle firearms. The district court also allowed the state to inquire into whether Knotz always buys the largest bottle of rum. The district court overruled Knotz's objection for relevance, but the record does not reflect on what basis it found the evidence relevant. Based on the prosecutor's closing argument, we infer that the information tended to show that the partially-consumed bottle of the same size found next to Knotz's guns belonged to Knotz and that he could have consumed any amount that was no longer in the bottle on the date of the charged offense. Because a colorable argument can be made for the relevancy of the evidence, it was not improper for the district court to admit it and not misconduct for the prosecutor to elicit the evidence.

Knotz next argues that the prosecutor improperly focused the jury's attention on the empty liquor bottles found in Knotz's bedroom. The district court ruled before trial that a photo of 15 empty bottles was of no probative value and would not be admitted unless for rebuttal. During the trial, the prosecutor called an officer who searched Knotz's bedroom and questioned him as follows:

> [PROSECUTOR}: Did you find anything else in the bedroom?
> [OFFICER]: We found several empty bottles of Captain Morgan in the bedroom.
> [PROSECUTOR]: I'll stop you right there.
> THE COURT: Ladies and gentlemen, that was a pink elephant. Just disregard that.

5

Knotz did not object to either the prosecutor's or the district court's corrective actions, so we review the alleged misconduct under the modified plain-error standard.

When reviewing alleged prosecutorial misconduct for plain error, "there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights. If these three prongs are met, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings." *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998) (citation omitted). An error is plain when it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). When an appellant establishes plain error, the burden shifts to the state to demonstrate lack of prejudice by showing that the misconduct did not affect substantial rights. *Id.* For the state to meet its obligation, it must "show that there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Id.* (quotations omitted).

Here, the prosecutor's question was not plain error because he was not attempting to elicit inadmissible testimony. "[U]nintended responses under unplanned circumstances ordinarily do not require a new trial." *State v. Hagen*, 361 N.W.2d 407, 413 (Minn. App. 1985), *review denied* (Minn. Apr. 18, 1985). After rephrasing the question, it was clear that the prosecutor had intended for the officer to describe the location where ammunition was found, not the empty liquor bottles. Upon hearing the officer give inadmissible information, the prosecutor immediately cut off the testimony. Moreover, the district court instructed the jury to disregard the comment. We will

presume that the jury followed the district court's instructions to disregard the statement. *See State v. Miller*, 573 N.W.2d 661, 675 (Minn. 1998). Given this instruction and the other evidence presented, there is no reasonable likelihood that the remark affected the verdict.

Knotz also argues that the prosecutor committed misconduct by focusing the jury's attention on the effect of hollow-point bullets, contending the information was irrelevant. The district court allowed the state to ask whether, once discharged, hollow-point bullets are designed to inflict as much damage as possible upon impact. The record does not reflect the district court's basis for overruling Knotz's objection. But the inquiry could be relevant to a number of issues, such as Knotz's knowledge of gun safety or whether he intended to inflict bodily harm upon his ex-wife, as required for second-degree assault. Therefore, the prosecutor did not elicit inadmissible evidence and thus did not commit misconduct.

Finally, Knotz argues that the prosecutor improperly referred to facts not in evidence during his closing argument when he said that a Google search confirmed that hollow-point bullets expand on impact. The district court overruled Knotz's objection. The fact that the prosecutor conducted a Google search and its results were not in evidence. However, the remark could not have affected the outcome because Knotz had already testified that hollow-point bullets expand on impact, and his testimony was uncontroverted. Furthermore, the remark appears to have been an isolated incident that did not rise to the level of misconduct required to deprive Knotz of a fair trial. Thus, any error was harmless.

7

## II.

At sentencing, Knotz moved for a new trial on the basis of prosecutorial misconduct, which the district court denied. A district court's denial of a new-trial motion is reviewed for an abuse of discretion. *State v. Gatson*, 801 N.W.2d 134, 151 (Minn. 2011). We reverse a district court's denial of a new trial motion alleging prosecutorial misconduct "only when the [prosecutor's] misconduct, considered in the context of the trial as a whole, was so serious and prejudicial that the defendant's constitutional right to a fair trial was impaired." *State v. Johnson*, 616 N.W.2d 720, 727-28 (Minn. 2000).

We have already held that any misconduct or error when considered in the context of the trial as a whole was not so serious or prejudicial that Knotz's right to a fair trial was impaired. "[T]he Constitution guarantees a fair trial—not a perfect or error-free trial." *State v. Dobbins*, 725 N.W.2d 492, 513 (Minn. 2006). Therefore, the district court did not abuse its discretion by denying Knotz's motion for a new trial.

**Affirmed.**