*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0860**

State of Minnesota,
Respondent,

vs.

Jose Antonio Diaz-Arreguin,
Appellant.

**Filed May 2, 2016
Affirmed
Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-14-8514

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Schellhas, Presiding Judge; Worke, Judge; and Johnson, Judge.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges his conviction of first-degree criminal sexual conduct, arguing that the district court abused its discretion by admitting expert testimony, denying his discovery motion, and excluding prior-sexual-conduct evidence. We affirm.

## FACTS

Appellant Jose Antonio Diaz-Arreguin and A.A. were in a romantic relationship for about ten months. On January 5, 2014, police responded to a report of a physical altercation between Diaz and A.A. On January 6, A.A. obtained an order for protection (OFP) against Diaz. On March 19, after about one month during which A.A. had electronic contact with Diaz but no in-person contact, Diaz approached A.A. as she was on her way to work, hugged her, took her purse from her and hung it around his neck, and told A.A. that his sister wanted to talk with her and she knew what would happen if she refused. A.A. then got into a taxi with Diaz, who directed the driver to take them to a hotel. Before exiting the taxi, A.A. obtained the driver's phone number so that she could call him to return for her after speaking to Diaz's sister. Diaz rented a room; his sister was not present. Once inside the room, Diaz threatened A.A., who called a coworker from the bathroom. Diaz kicked open the bathroom door, took A.A.'s phone, turned it off, removed A.A.'s clothing, threatened her with a knife, and physically and sexually assaulted her. Later that day, A.A. reported the assault to police and underwent a sexual-assault examination. A week later, A.A. showed an investigating officer bruises that appeared after the assault.

Respondent State of Minnesota charged Diaz with first-degree and third-degree criminal sexual conduct. A jury trial commenced on January 13, 2015, and the jury found Diaz guilty as charged. The district court sentenced Diaz to 144 months' imprisonment for first-degree criminal sexual conduct.

This appeal follows.

## DECISION

*Admission of expert testimony*

Diaz argues that the district court abused its discretion by admitting expert testimony on the effects of battering on domestic-violence victims. "Rulings concerning the admission of expert testimony generally rest within the sound discretion of the district court and will not be reversed absent a clear abuse of discretion." *State v. Mosley*, 853 N.W.2d 789, 798–99 (Minn. 2014), *cert. denied*, 135 S. Ct. 1185 (2015). Likewise, "[r]ulings on the relevancy of evidence are generally left to the sound discretion of the trial court." *State v. Hanks*, 817 N.W.2d 663, 668 (Minn. 2012). "When the admissibility of evidence is challenged on appeal, [appellate courts] defer to the district court's exercise of discretion in the conduct of the trial, and [appellate courts] will not lightly overturn a district court's evidentiary ruling." *Id.* at 667 (quotation omitted). Even if a district court abuses its discretion by admitting expert testimony against a criminal defendant, appellate courts will not reverse "if there is no reasonable possibility that [the testimony] substantially influenced the jury's decision." *See State v. Taylor*, 869 N.W.2d 1, 14 (Minn.

2015) (quotation omitted) (assuming without deciding that district court erred by admitting expert testimony and concluding that assumed error was harmless).

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Minn. R. Evid. 702. "Expert testimony is only admissible if the testimony will help the trier of fact in evaluating evidence or resolving factual issues." *State v. Ali*, 855 N.W.2d 235, 251–52 (Minn. 2014) (quotation omitted). "[T]he standard for assessing the helpfulness of proposed expert testimony . . . is an objective standard." *Mosley*, 853 N.W.2d at 800. That is, "[a]n expert opinion is helpful if the members of the jury, having the knowledge and general experience common to every member of the community, would be aided in the consideration of the issues by the offered testimony." *State v. Dao Xiong*, 829 N.W.2d 391, 396 (Minn. 2013) (quotations omitted).

"Generally, battered woman syndrome expert testimony may be helpful to juries because battered woman syndrome is beyond the understanding of the average person, and expert testimony may help to explain a phenomenon not within the understanding of an ordinary lay person." *Hanks*, 817 N.W.2d at 667 (quotations omitted). The supreme court has "recognized that battered woman syndrome expert testimony is admissible . . . when the State seeks to rehabilitate the credibility of a battered woman in the prosecution of her batterer," *id.*, by "educat[ing] jurors about battered woman syndrome (BWS) and counterintuitive behaviors commonly associated with BWS," *State v. Obeta*, 796 N.W.2d 282, 291 (Minn. 2011). To determine the relevance of battered-woman-syndrome

4

evidence, appellate courts "consider whether the proffered evidence demonstrated that the [parties] had the type of relationship about which the expert will testify." *Hanks*, 817 N.W.2d at 668.

Over Diaz's objection, the district court admitted the expert testimony of Scott Miller of the Domestic Abuse Intervention Project in Duluth on the effects of battering on domestic-violence victims. The court concluded that the testimony likely would be relevant and helpful to the jury because Diaz had attacked A.A.'s credibility on cross-examination and was presenting consent as a defense. Miller testified that "battering" is a "subset of the crime of domestic violence" in which "one intimate partner . . . through violence or intimidation tries to dominate another partner," that victims of battering have power imbalances in their relationships with batterers, and that victims have common fears and counterintuitive behaviors as a result of the common tactics used by batterers to maintain their relationships with victims. Miller testified that batterers typically use threatened or actual physical or sexual violence, that threats of violence are "[v]ery effective" at "maintaining . . . power and control in a relationship," and that in the majority of domestic-violence cases the parties maintain contact despite the issuance of OFPs. Miller did not meet A.A. or review any police reports or other information related to this case.

Diaz argues that Miller's testimony was not relevant or helpful to the jury's assessment of A.A.'s behavior because A.A. explained how she felt and what she did and why, and the jury heard testimony from witnesses who observed A.A. after the incident. He also argues that Miller's testimony was not relevant or helpful to explain the counterintuitive behaviors of domestic-violence victims because A.A.'s behavior was not

counterintuitive. In addition, Diaz argues that any probative value of Miller's testimony was outweighed by its prejudice because it bolstered A.A.'s testimony and undermined Diaz's presumption of innocence. We disagree.

A.A. testified that Diaz became "an aggressive person" about two months after she began dating him. His aggressive behavior included threatening to kill A.A. and "do something" to her three-year-old daughter, isolating A.A. from her family and friends, breaking her cellphone and other items, and punching a hole in a wall in her apartment. After A.A. obtained an OFP against Diaz in January 2014, she continued to have in-person and electronic contact with him because he threatened her and used his keys to enter her apartment. Diaz wrote on his Facebook page that he loved A.A. but threatened her in person.

Moreover, the state's case relied heavily on A.A.'s credibility and, on cross-examination, Diaz attacked A.A.'s credibility on the basis of her continued relationship with him after obtaining an OFP; her failure to seek assistance from police, the taxi driver, or passersby on the date of the assault; and inconsistencies between A.A.'s testimony and prior statements to police and the nurse who performed the sexual-assault examination. Miller's expert testimony may have helped the jury assess A.A.'s credibility in light of her counterintuitive behavior.

We conclude that Miller's testimony was relevant and helpful to the jury because Diaz and A.A.'s relationship bore the characteristics of a battering relationship and A.A.'s credibility was at issue. The district court did not abuse its discretion by admitting Miller's expert testimony to aid the jury in evaluating evidence and resolving factual issues. And

even if the court abused its discretion by admitting Miller's testimony, any error was harmless. Miller testified only generally about battering, its perpetrators, and its victims. He acknowledged that he did not know A.A. or review any police reports or other information related to this case, and he did not opine that A.A. had been battered or that Diaz was a batterer. Any error in the court's admission of Miller's testimony was harmless and warrants no relief because no reasonable possibility exists that the testimony substantially influenced the jury's decision. *See Taylor*, 869 N.W.2d at 14 ("An error is harmless if there is no reasonable possibility that it substantially influenced the jury's decision." (quotation omitted)).

*Diaz's discovery motion; exclusion of evidence of A.A.'s prior sexual conduct*

Diaz argues that the district court abused its discretion by denying his discovery motion related to A.A.'s involvement with another man at the time of the charged offense and by prohibiting him from cross-examining A.A. about her prior sexual conduct. "District courts have wide discretion on discovery rulings," *State v. Burrell*, 697 N.W.2d 579, 603 (Minn. 2005), and appellate courts review evidentiary rulings "for an abuse of discretion, even when a constitutional violation is alleged," *State v. Wenthe*, 865 N.W.2d 293, 306 (Minn. 2015), *cert. denied*, 136 S. Ct. 595 (2015). "A violation of a criminal defendant's constitutional rights necessitates a new trial unless the violation was harmless beyond a reasonable doubt." *Id.* "An error is harmless beyond a reasonable doubt if the jury's verdict was surely unattributable to the error." *State v. Sterling*, 834 N.W.2d 162, 171 (Minn. 2013) (quotation omitted).

At issue here is information obtained by the state through an interview of A.A. on January 5, 2015, eight days before trial. During the interview, A.A. disclosed that she had told Diaz that there was another man involved in her life. She also disclosed that she had given birth to a baby on December 18, 2014, who was conceived with the other man on April 4, 2014. The state disclosed this information to Diaz and, on January 6, 2015, moved to exclude evidence of A.A.'s sexual conduct before or after the alleged assault by Diaz on March 19, 2014. Diaz moved to compel the state to disclose the name, address, and criminal convictions of the other man from the state's interview notes, along with "the complete medical record related to the conception, pregnancy, and childbirth of [A.A.]'s infant born December 18, 2014." The district court denied Diaz's motion, concluding that the requested evidence was excluded by Minn. R. Evid. 412. The court prohibited Diaz from cross-examining A.A. regarding her prior sexual conduct.

> In a prosecution for criminal sexual conduct, "evidence of the victim's previous sexual conduct shall not be admitted nor shall any reference to such conduct be made in the presence of the jury," unless one of the enumerated exceptions applies and "the probative value of the evidence is not substantially outweighed by its inflammatory or prejudicial nature."

*Wenthe*, 865 N.W.2d at 306 (quoting Minn. Stat. § 609.347, subd. 3 (2014)); *accord* Minn. R. Evid. 412(1). Here, the requested evidence sought by Diaz is excluded by the rape-shield statute and the corresponding rule. First, while Diaz presented A.A.'s consent as a defense, the requested evidence does not "tend[] to establish a common scheme or plan of similar sexual conduct" or relate to "the victim's previous sexual conduct with the accused." Minn. Stat. § 609.347, subd. 3(a) (2012); *accord* Minn. R. Evid. 412(1)(A). Second, the state's

8

case did not "include[] evidence of semen, pregnancy, or disease." Minn. Stat. § 609.347, subd. 3(b) (2012); *accord* Minn. R. Evid. 412(1)(B).

Diaz argues that even if information about A.A.'s relationship with the other man did not fall neatly within an exception to the rape-shield statute and rule, due process required its admission in order to vindicate Diaz's rights to confront his accusers or to offer evidence in his own defense. The supreme court has construed the rape-shield law as allowing sexual-history evidence "when admission is constitutionally required by the defendant's right to due process, his right to confront his accusers, or his right to offer evidence in his own defense." *Wenthe*, 865 N.W.2d at 306 (quotation omitted). Diaz argues that the requested evidence was directly relevant to a material issue—whether A.A. was injured during a sexual assault—and was necessary to rebut the inference in the state's case that Diaz caused A.A.'s bruises. Diaz relies on two cases to support his argument, *State v. Benedict*, 397 N.W.2d 337 (Minn. 1986), and *State v. Kroshus*, 447 N.W.2d 203 (Minn. App. 1989), *review denied* (Minn. Dec. 20, 1989).

In *Benedict*, the supreme court stated,

> Despite the prohibition of a rape-shield law or rule, a trial court has discretion to admit evidence tending to establish a source of knowledge of or familiarity with sexual matters [by a child victim] in circumstances where the jury otherwise would likely infer that the defendant was the source of the knowledge.

397 N.W.2d at 341. In *Kroshus*, this court concluded that the district court erred by excluding evidence that the adult victim, who had the mental capacity of a seven-and-one-half-year-old child, previously had recounted an incident of sexual abuse because the jury heard evidence that the victim was not educated about sexual matters and, as a result, the

9

jury could infer that the victim could not have made the allegations involving the defendant unless the alleged events occurred. 447 N.W.2d at 205. Relying on *Benedict* and *Kroshus*, Diaz argues that A.A.'s prior sexual relationship with the other man was "necessary to rebut the inference that [Diaz] was the sole source of the bruises that were first seen and documented seven days after the charged incident." But Diaz's reliance on *Benedict* and *Kroshus* is misplaced because both cases addressed evidence related to the source of a victim's knowledge of sexual matters, not evidence related to the source of a victim's injuries. *Benedict*, 397 N.W.2d at 341; *Kroshus*, 447 N.W.2d at 205.

Diaz argues that evidence that A.A. was involved with another man at the time of the alleged assault raised the possibility that the other man caused A.A.'s bruises and therefore was relevant to A.A.'s credibility and the jury's determination about whether the state had proved every element beyond a reasonable doubt. Relying on *State v. Carroll*, 639 N.W.2d 623 (Minn. App. 2002), *review denied* (Minn. May 15, 2002), Diaz argues that the district court "interfered with [his] exercise of his right to present a defense and confront his accusers." In *Carroll*, the victim stated in a video recording that no one had ever touched her inappropriately. 639 N.W.2d at 625. But in a second video recording, she stated that the defendant inappropriately touched her and explained the inconsistency between the two statements. *Id.* at 625–26. The district court admitted both video recordings but refused to allow the defendant to cross-examine the victim about the inconsistency, excluded testimony of other witnesses about the inconsistency, and prohibited reference to the inconsistency in closing argument. *Id.* at 626. This court

10

concluded that the district court abused its discretion by not permitting legitimate cross-examination or closing argument on the inconsistency between the statements. *Id.* at 629.

In this case, the district court concluded that the requested evidence was "substantially more prejudicial than probative" because "the evidence [wa]s not relevant as an alternative explanation for the bruises on [A.A.]'s legs and arms absent evidence that this other male committed some sort of violence against [A.A.]." But the court permitted Diaz to cross-examine A.A. at length about her January 5, 2015 statement to the prosecutor that she was involved with another man at the time of the assault, and A.A. acknowledged that she was involved with another man at the time of the assault. Diaz also questioned A.A., the nurse, and a police officer about the development of bruises and the age and coloration of A.A.'s bruises as depicted in photographs taken a week after the assault. During closing arguments, Diaz noted A.A.'s relationship with the other man and argued that Diaz did not cause A.A.'s bruises. We conclude that the district court properly balanced the probative value of the requested evidence with its potential for unfair prejudice and did not abuse its discretion by denying Diaz's discovery motion as it related to A.A.'s sexual history.

Even if the district court abused its discretion, given Diaz's ample opportunity to cross-examine A.A. about the other man, any error in limiting evidence about A.A.'s prior sexual conduct was harmless beyond a reasonable doubt. *See Wenthe*, 865 N.W.2d at 306 ("A violation of a criminal defendant's constitutional rights necessitates a new trial unless the violation was harmless beyond a reasonable doubt."). "An error is harmless beyond a reasonable doubt if the jury's verdict was surely unattributable to the error." *Sterling*, 834

11

N.W.2d at 171 (quotation omitted). The jury rejected Diaz's theory that he and A.A. engaged in consensual sexual intercourse and that he did not cause A.A.'s bruises or, if he did, they resulted from consensual sexual intercourse. We conclude that any error by the court in denying Diaz's motion to compel the requested evidence was harmless beyond a reasonable doubt.

**Affirmed.**