STATE OF MINNESOTA

IN SUPREME COURT

A15-2013

Ramsey County                                                                                     Lillehaug, J.

State of Minnesota,

            Respondent,

vs.                                                                              Filed: January 4, 2017
                                                                                 Office of Appellate Courts
Neal Curtis Zumberge,

            Appellant.

_____

Lori Swanson, Minnesota Attorney General, Saint Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant Ramsey County Attorney, Saint Paul, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.      The district court did not abuse its discretion when, by pretrial order, it excluded certain evidence proffered by appellant. The district court's exclusion of one piece of evidence was harmless error.

2.      The district court did not abuse its discretion when it denied appellant's request for a third-degree murder instruction.

1

3.     The district court did not err when it denied appellant's motion to dismiss the charge of first-degree murder.

Affirmed.

O P I N I O N

LILLEHAUG, Justice.

A Ramsey County jury found appellant Neal Zumberge guilty of first-degree murder, first-degree attempted murder, second-degree murder, and second-degree attempted murder, for fatally shooting Todd Stevens and wounding Jennifer Cleven on May 5, 2014. The district court sentenced Zumberge to consecutive terms of life imprisonment without the possibility of release for the first-degree murder of Stevens and 180 months for the attempted first-degree murder of Cleven.

On direct appeal, Zumberge contends that the district court erred when it excluded evidence relevant to his reasonable fear of Stevens on the night of the shooting, denied his request for a third-degree murder instruction, and denied his motion to dismiss the charge of first-degree murder. For the reasons that follow, we affirm his convictions.

Neal Zumberge and Todd Stevens were neighbors. Stevens and his longtime girlfriend, Jennifer Cleven, enjoyed feeding deer in their yard and did so for more than a decade. Zumberge, who lived across the street, did not like having deer in the neighborhood.

Over a period of about two years, Zumberge's relationship with Stevens and Cleven deteriorated. In 2012, Zumberge circulated a letter to neighbors expressing frustration about the deer. Later that year, Stevens and Cleven found mutilated animals in their yard

2

and suspected that Zumberge was responsible. Cleven testified that when she confronted Zumberge about the dead animals, he threatened to kill her. In response, Cleven obtained a harassment restraining order against Zumberge. Tensions continued to rise. Cleven repeatedly accused Zumberge of blowing an air horn to scare the deer feeding in her yard. While talking with a neighbor about the deer, Zumberge said "it would all be over soon."

On April 29, 2014, Cleven called police and claimed that Zumberge's son, Jacob, had threatened to kill her. Police told Cleven to call them if she saw Jacob so that they could arrest him. Zumberge testified that, following this incident, and out of fear that hostilities would escalate further, he retrieved a 12-gauge shotgun from his basement and taught his wife, Paula, how to use it. He then loaded the gun with four shells, each containing eight pellets of buckshot, removed the trigger lock, and placed the gun under the living room couch.

About a week later, Cleven saw Jacob at a bar and called the police. Jacob was arrested. Jacob's brother, who was also at the bar, called Paula to tell her about Jacob's arrest. When Cleven returned home that night, Paula went outside to confront her. Paula stood at the end of her driveway and yelled across the street at Cleven, who stood near her own front door. Zumberge watched the confrontation through the living room window.

At some point during the cross-street yelling, Stevens came out of the house and stood next to Cleven. Upon seeing Stevens leave his house, Zumberge retrieved his shotgun, went to the basement, climbed through an egress window, and peered around the corner of the house toward Stevens and Cleven. Zumberge was located about 145 feet from Stevens. After about one minute, using lip-reading skills allegedly honed when

3

growing up with a deaf brother, Zumberge testified that he thought he saw Stevens say, "I'm gonna kill that f***ing b****." Zumberge testified that he saw Stevens reach for his belt, where Zumberge said Stevens previously kept a gun. Zumberge brought his shotgun up, "it went off," and "everything . . . was just a blur." Zumberge fired four shots in quick succession, hitting Stevens three times, and hitting Cleven once as she ran back into her house. Stevens died soon after. Cleven recovered from her injuries after hospitalization.

Zumberge testified that he intended to "stop" Stevens and did not intend to hurt Cleven. Stevens had a phone holder attached to his belt and was not armed when Zumberge shot him.

The State initially charged Zumberge by complaint with second-degree intentional murder, Minn. Stat. § 609.19, subd. 1(1) (2016), and attempted second-degree intentional murder, Minn. Stat. § 609.17 (2016). Later, the State obtained an indictment on those charges as well as for first-degree premeditated murder, Minn. Stat. § 609.185(a)(1) (2016), and attempted first-degree premeditated murder, Minn. Stat. § 609.17. The district court denied Zumberge's motion to dismiss the first-degree murder charge. The district court also issued three pretrial orders in which it ruled, among other things, that 16 pieces of evidence proffered by Zumberge were inadmissible.

The case went to trial. After resting his case, Zumberge asked that the jury be instructed on third-degree murder. The court initially granted the motion, but reconsidered the request the next day, after conducting further research, and denied the motion. A jury convicted Zumberge on all counts.

4

On direct appeal, Zumberge argues that the district court erred when it excluded evidence relevant to whether he had a reasonable fear of great bodily harm on the night of the shooting, which is an element of self-defense. He also argues that the district court erred when it denied his request for a third-degree murder instruction and his motion to dismiss the charge of first-degree murder.

Because we conclude that the district court did not abuse its discretion in excluding evidence and in denying a third-degree murder instruction, and did not err in denying the motion to dismiss, we affirm Zumberge's convictions.

I.

Zumberge contends that the district court erred in excluding evidence relevant to an element of his self-defense claim, specifically whether he was in reasonable fear of great bodily harm on the night of the shooting. Zumberge does not explain why the exclusion of any individual piece of evidence was erroneous. Instead, he contends that the district court's orders excluding the proffered evidence generally impeded his constitutional right to present a defense.

We review a district court's evidentiary rulings for abuse of discretion, even when, as here, the defendant claims that the exclusion of evidence deprived him of his constitutional right to a meaningful opportunity to present a complete defense. *State v. Penkaty*, 708 N.W.2d 185, 201 (Minn. 2006). Even if an objection was made and a district court abused its discretion, we reverse only if the exclusion of evidence was not harmless beyond a reasonable doubt. *State v. Richardson*, 670 N.W.2d 267, 277 (Minn. 2003). An error is not harmless beyond a reasonable doubt when "there is a reasonable possibility that

5

the [error] complained of may have contributed to the conviction." *Id.* (alteration in original) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

The defense of self or another has four elements: (1) the absence of aggression or provocation by the defendant, (2) the defendant's actual and honest belief that he or another was in imminent danger of death or great bodily harm, (3) the existence of reasonable grounds for the belief, and (4) the absence of a reasonable possibility of retreat to avoid danger. *State v. Basting*, 572 N.W.2d 281, 285 (Minn. 1997); *see* Minn. Stat. § 609.06, subd. 1(3) (2016). Once a defendant offers evidence supporting each element of the defense, the prosecution bears the burden of disproving at least one of the elements beyond a reasonable doubt. *Basting*, 572 N.W.2d at 286.

All of the evidence at issue on this appeal involves specific acts by Stevens or Cleven. When self-defense is asserted, evidence of a specific act is admissible only to show that a defendant reasonably feared great bodily harm, provided that the defendant proves that he knew of the specific act at the time of the alleged offense. *State v. Bland*, 337 N.W.2d 378, 382 (Minn. 1983). Evidence of specific acts of violence is admissible "where commonsense indicates that these acts could legitimately affect a defendant's apprehensions." *State v. Matthews*, 221 N.W.2d 563, 564 (Minn. 1974). Like all evidence, specific-acts evidence offered to show that a defendant reasonably feared great bodily harm must also be relevant and more probative than prejudicial. *Penkaty*, 708 N.W.2d at 203.

We have carefully reviewed each piece of evidence at issue, and conclude that nearly all of the contested evidence merited exclusion for at least one of three reasons: it

6

was irrelevant, Zumberge was not aware of it at the time of the shooting, or it was inadmissible hearsay.

Evidence is only relevant to self-defense if it bears on whether Zumberge reasonably feared great bodily harm from Stevens at the time of the shooting. So evidence about people other than Zumberge and Stevens was not relevant. Zumberge contests the exclusion of evidence that Stevens asked a police officer to remove Cleven from their home after Stevens observed her "acting in a disorderly conduct way," and that Cleven had admitted to a recent DWI and car accident. Zumberge also contests the exclusion of evidence that police responded to a domestic dispute between Cleven and her brother in 2011. These pieces of evidence are irrelevant; they concern Cleven (not Stevens) and do not bear on whether Zumberge reasonably feared great bodily harm. Likewise, evidence that, two weeks *after* the shooting, Cleven asked police to bar Stevens's father from visiting is irrelevant because it could not have caused Zumberge to fear Stevens *at the time* of the shooting.

Behavior by Stevens that would not arouse fear in Zumberge is also irrelevant. Zumberge proffered evidence that Stevens habitually urinated on Zumberge's yard, routinely locked Cleven out of their home, and sometimes plowed snow onto Zumberge's property. None of these acts could plausibly have informed Zumberge's fear of great bodily harm at the time of the shooting.

Specific-acts evidence is admissible on self-defense only if the defendant knew of the act at the time of the offense. Zumberge failed to make any such threshold showing for much of the evidence at issue, including the following:

7

- Around 2005, police were called to Stevens's home. While police were there, Stevens wanted to reach into his phone carrying case to make a phone call, but police insisted that he not put his hands near the case.

- In 2008, Cleven called police to her home after Stevens threatened her while intoxicated. When police arrived, Stevens threatened to shoot them, and the officers eventually arrested him after shooting him with a stun gun.

- In 2009, Cleven reported that Stevens hit her, but Cleven later retracted the report because she did not want Stevens to go to jail.

- In 2011, Stevens and his father assaulted one another. Stevens's niece told police that Stevens was intoxicated and might fight with police. Stevens told the officers "to have the tazer [sic] ready cause he was 'not sittin,' " and Stevens was removed from the house in handcuffs. Stevens was later seen yelling into his cell phone that he was going to kill a member of his family.

- In 2012, police were called to Stevens's home when Stevens and Cleven were arguing. After police arrived, Stevens and Cleven resolved their disagreement.

- In 2013, Cleven reported that Zumberge was scaring deer from her property with an air horn. Police concluded that this action, even if it actually happened, would not violate Cleven's harassment restraining order. In response to law

8

enforcement's decision not to intervene, Stevens told an officer, "If I have to handle this myself, I will."[1]

Zumberge proffered one additional piece of evidence that would have been inadmissible hearsay. Zumberge contests the exclusion of evidence of a 2013 incident in which Cleven reported that Zumberge violated her harassment restraining order by entering Stevens's yard. Police looked at a video captured by Stevens's surveillance camera, but it did not show Zumberge entering Stevens's yard. Later, police took a report that Stevens confronted Zumberge and his family in Zumberge's driveway and threatened to kill them. This evidence is hearsay within hearsay: the police officer would have testified that a declarant (Zumberge) said that another declarant (Stevens) made a threatening statement. Minn. R. Evid. 801(c) (explaining that hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

Many of the 16 pieces of excluded evidence were also cumulative of evidence admitted at trial. Minnesota Rule of Evidence 403 allows a district court to exclude relevant evidence when its probative value is substantially outweighed by, among other things, needless presentation of cumulative evidence. When a jury hears a wealth of evidence on a topic, the exclusion of other evidence on that same topic is unlikely to be prejudicial. *Bland*, 337 N.W.2d at 384; s*ee also State v. Buchanan*, 431 N.W.2d 542, 551

---

[1] This piece of evidence is inadmissible both because Zumberge did not prove that he was aware of it at the time of the shooting, and it would have been hearsay if offered through an officer's testimony.

(Minn. 1988) (stating that evidence that "merely duplicated other evidence already presented" was cumulative). The cumulative evidence can be sorted into three categories: (1) threats Stevens made to Zumberge and other people, (2) specific acts illustrating Stevens's character, and (3) testimony about Stevens's habit of carrying a gun in his cell phone case.

First, Stevens's threats toward others were discussed at length at trial. Witnesses testified to several threats by Stevens directed at Zumberge and his family, and recounted Stevens making gun gestures with his hand toward Zumberge's property. The jury also heard testimony that Stevens made menacing remarks to Zumberge while holding a gun, and that Zumberge generally felt threatened by Stevens. For example, the most probative piece of excluded evidence would have been a police officer's testimony about a 2013 incident in which Stevens threatened to kill Zumberge and his family. But Zumberge testified about this exact incident without objection. The excluded evidence would have added little or nothing on this topic. *See State v. Abbott*, 356 N.W.2d 677, 680 (Minn. 1984) (stating that when a prosecutor does not impeach the defendant's testimony on a topic, similar evidence is cumulative because the jury likely credited the defendant's testimony).

Likewise, the district court excluded proffered testimony from Zumberge that, after he learned of a confrontation between his son Jacob and Stevens at a VFW club, he parked a block from his home and entered his home through a window out of fear for his safety. At trial, there were numerous references to the VFW incident. Cleven testified about it. Paula Zumberge testified that a police officer came to the Zumberge home that night,

10

looking for Jacob. Zumberge testified that he retrieved his shotgun "because of the incident at the VFW" and that he loaded shells into his shotgun one week "after the VFW incident." The jury did not reject Zumberge's claim of defense of self or another without having the opportunity to consider Zumberge's state of mind in the aftermath of the VFW incident.[2]

Second, the jury heard extensive testimony casting Stevens's character in a negative light. Neighbors testified that Stevens frequently drank beer in his yard. Zumberge's son described observing Stevens passed out in his front yard "more than ten times."[3] A police officer testified that many officers had been to Stevens's house in the past. And Zumberge's wife described Stevens and Cleven as "neighbors that, you know, are continually fighting all the time and the police coming over to their house all the time, you know." The excluded evidence would have covered the same ground.

Third, several witnesses testified to seeing Stevens carry a gun on his belt. Additional evidence on this point would have been cumulative.

Moreover, if any of the proffered evidence was erroneously excluded, its exclusion was harmless beyond a reasonable doubt, not just because the evidence was cumulative, but because the State's case was strong. We may consider the strength of each party's

---

[2]     To the extent proffered testimony about Zumberge's decision to park down the block and enter his home through the window would have provided some additional detail, the district court's exclusion of the evidence was harmless error. As discussed below, the evidence to convict was very strong. *See State v. Dillon*, 532 N.W.2d 558, 558 (Minn. 1995).

[3]     The district court excluded proffered testimony from Paula Zumberge that Stevens had a reputation for chemical abuse. Such evidence would have been cumulative.

11

evidence when determining whether admitting excluded evidence would have led to a different result. *State v. Turner*, 359 N.W.2d 22, 24 (Minn. 1984).

The State had a very strong case that, on May 5, 2014, Zumberge did not act in self-defense, but with premeditation and intent to kill. Zumberge and Stevens had feuded for years. A few months before the shooting, Zumberge told a neighbor, "it would all be over soon." A week before the shooting, Zumberge retrieved and loaded his shotgun with buckshot. Zumberge shot Stevens after climbing out of his basement window and peering around the edge of his home. At the time of the shooting, Stevens was standing near his own house, unarmed and with his arms crossed. Zumberge's testimony that he lip-read a threat from 145 feet away was questionable. Zumberge shot repeatedly. The jury concluded that, given these and other facts, Zumberge did not act in self-defense. There is no reasonable possibility that admitting the excluded evidence at issue would have altered that conclusion.

II.

Zumberge also argues that the district court incorrectly denied his request for a third-degree murder instruction. He asserts, in particular, that he fired the gun to scare off Stevens and Cleven, but that he did not intend to hit either of them. Based on our review of Zumberge's testimony, we conclude that he was not entitled to a third-degree murder instruction.

A lesser-included-offense instruction must be given when (1) the lesser offense is included in the charged offense, (2) the evidence provides a rational basis for acquitting the defendant of the offense charged, and (3) the evidence provides a rational basis for

12

convicting the defendant of the lesser-included offense. *State v. Dahlin*, 695 N.W.2d 588, 598 (Minn. 2005). We review the denial of a requested lesser-included-offense instruction for an abuse of discretion. *Id.* In doing so, we view the evidence in the light most favorable to the party requesting the instruction. *Id.* The trial court "may not weigh the evidence or make credibility determinations"; doing so is an abuse of discretion. *Id.* But even if the trial court abused its discretion, reversal is warranted only if the defendant can show prejudice. *Id.* at 598-99. "A defendant is prejudiced when the jury may have convicted the defendant of only the lesser offense had the lesser-included-offense instruction been given." *Troxel v. State*, 875 N.W.2d 302, 310 (Minn. 2016).

In Minnesota, every lesser degree of murder is an included offense. *State v. Leinweber*, 228 N.W.2d 120, 125 (Minn. 1975); *see also* Minn. Stat. § 609.04 (2016). Minnesota's third-degree murder statute states: "Whoever, without intent to effect the death of any person, causes the death of another by perpetrating an act eminently dangerous to others and evincing a depraved mind, without regard for human life, is guilty of murder in the third degree . . . ." Minn. Stat. § 609.195(a) (2016). We have made clear that the statute covers only acts "committed without special regard to their effect on any particular person or persons; the act must be committed without a special design upon the particular person or persons with whose murder the accused is charged." *State v. Wahlberg*, 296 N.W.2d 408, 417 (Minn. 1980). Third-degree murder "cannot occur where the defendant's actions were focused on a specific person." *State v. Barnes*, 713 N.W.2d 325, 331 (Minn. 2006).

13

In this case, even a favorable review of the relevant facts provides no rational basis for a third-degree murder instruction. Even assuming Zumberge did not intend to *harm* Stevens, his testimony confirms that the shooting was committed with "special regard to [its] effect on [a] particular person." *Wahlberg*, 296 N.W.2d at 417. Zumberge's argument that the shots were merely "toward" Stevens and Cleven—rather than *at* them—cannot overcome the fact that Zumberge twice testified that he fired the gun to "stop" Stevens. This targeted purpose shows "a special design upon the particular person," precluding a third-degree murder instruction. *Id.*

### III.

Finally, Zumberge argues that the district court erred by denying his pretrial motion to dismiss Count I of the indictment: the first-degree murder charge. He contends that the first-degree murder charge was supported by inadmissible evidence and that certain exculpatory evidence was not presented to the grand jury. We affirm the district court's decision not to dismiss Count I.

"[A] presumption of regularity attaches to a grand jury indictment, and it is a rare case where an indictment is invalidated." *Penkaty*, 708 N.W.2d at 196. A "criminal defendant bears a heavy burden when seeking to overturn an indictment," especially when "the challenge is brought after [the defendant] has been found guilty beyond a reasonable doubt following a fair trial." *State v. Scruggs*, 421 N.W.2d 707, 717 (Minn. 1988). But "an indictment should be dismissed if the state knowingly engaged in misconduct that substantially influenced the grand jury's decision to indict and if [the court has] grave doubts that the decision to indict was free of any influence of misconduct." *Penkaty*,

14

708 N.W.2d at 196.  We analyze the effect of alleged misconduct or deficiencies on the grand jury proceeding "after looking at all of the evidence that the grand jury received." *State v. Lynch*, 590 N.W.2d 75, 79 (Minn. 1999).  We consider whether the grand jury was presented with evidence sufficient to indict despite the alleged misconduct.  *State v. Smith*, 876 N.W.2d 310, 324 (Minn. 2016).

The district court did not err in denying Zumberge's motion to dismiss the charge of first-degree murder.  The district court issued a detailed order and memorandum addressing each alleged deficiency in the grand jury process.  The court ruled that sufficient admissible evidence supported the first-degree murder indictment and any errors did not materially affect the grand jury's decision.  We agree.  Zumberge falls well short of meeting his heavy burden to show that the state engaged in misconduct that substantially influenced the grand jury's decision.

For the foregoing reasons, we affirm.

Affirmed.