**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-1349**

State of Minnesota,
Respondent,

vs.

Ryan James Martens,
Appellant.

**Filed September 18, 2023**
**Affirmed**
**Wheelock, Judge**

Kanabec County District Court
File No. 33-CR-21-304

Keith Ellison, Attorney General, Jacob Campion, Assistant Attorney General, St. Paul, Minnesota; and

Reese Frederickson, Pine County Attorney, Pine City, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Greg Scanlan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Wheelock, Presiding Judge; Frisch, Judge; and Halbrooks, Judge.[*]

**SYLLABUS**

Pursuant to Minn. Stat. § 260E.06, subd. 1(a) (2022), a mandated reporter must submit a maltreatment report if the mandated reporter knows or has reason to believe that

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

a child has been maltreated within the preceding three years regardless of whether the child has reached the age of majority before the time of the report.

**OPINION**

**WHEELOCK**, Judge

Respondent State of Minnesota charged appellant Ryan James Martens with one count of third-degree criminal sexual conduct after Kanabec County authorities received a maltreatment report alleging that Martens had engaged in sexual intercourse with his children's babysitter, E.F., when E.F. was 17 years old. Martens's therapist, a mandated reporter, submitted the maltreatment report to the county based on statements Martens made during a therapy session. E.F. was 18 years old at the time the therapist made the report.

Before trial, Martens moved to exclude his therapist's maltreatment report and testimony on the basis that the statements he made to his therapist are protected by therapist-client privilege. The district court determined that Minn. Stat. § 260E.06 (2022)[1] (the mandated-reporter statute) required the therapist to submit a maltreatment report and that the therapist-client privilege did not apply to the required information contained in the report, and it therefore denied the motion.

Martens challenges the district court's denial of his motion, arguing that the mandated-reporter statute does not require a maltreatment report when the alleged victim

---

[1] In 2020, the legislature reorganized Minnesota laws relating to child maltreatment. *See* 2020 Minn. Laws 1st Spec. Sess. ch. 2, at 867. We cite the most recent version of statutes in chapter 260E because the relevant language in effect at the time of the therapist's report in 2021 has not been amended.

is an adult at the time the disclosure is made to the mandated reporter. He also argues that the district court abused its discretion by excluding two pieces of evidence that he offered to support his contention that sexual intercourse between E.F. and him did not occur until after E.F. turned 18 years old.

We conclude that the mandated-reporter statute required the submission of a maltreatment report in these circumstances, the district court did not err in denying Martens's motion to exclude his therapist's report and testimony, and the district court did not abuse its discretion in excluding certain pieces of Martens's evidence. Therefore, we affirm.

**FACTS**

In June 2021, Martens attended an intake session with a marriage and family therapist. Martens disclosed to the therapist that he had been "having an affair" with his children's babysitter, E.F. Based on this conversation, the therapist understood that Martens first engaged in sexual intercourse with E.F. when she was 17 years old. The therapist informed Martens that she was a mandated reporter and indicated that she would have to report the disclosure. She submitted a maltreatment report both verbally and in writing to Kanabec County authorities. Law enforcement then contacted and interviewed E.F., who confirmed that Martens first had sexual intercourse with her in April 2020, when Martens was 36 years old and E.F. was 17 years old.

In August 2021, the state charged Martens with third-degree criminal sexual conduct in violation of Minn. Stat. § 609.344, subd. 1(e) (2018). Prior to trial, Martens filed several motions in limine, including a motion "[f]or an Order prohibiting the State

from reference to or testimony regarding any and all hearsay statements made by Defendant to his Therapist." The district court denied the motion.

In April 2022, the district court held a jury trial at which the only disputed issue was whether E.F. was younger than 18 years when Martens first engaged in sexual intercourse with her.

E.F. testified that she began to babysit for the Martens family at their house when she was 15 years old. When E.F. was 16 years old, Martens began to touch her "[a]lmost every time [she] was there" on her buttocks or "in [her] pants or . . . in [her] shirt." E.F. testified that the touching escalated to sexual intercourse on Easter in April 2020, when she was 17 years old. Easter occurred on April 12 that year.

E.F. testified that Martens engaged in sexual intercourse with her on various occasions for approximately one year following the first incident. She testified that she stopped having sexual intercourse with Martens and ended the relationship in May 2021, approximately seven months after she turned 18 years old.

Martens admitted to having sexual intercourse with E.F., but he denied E.F.'s version of events. He testified that he and E.F. "began flirting" in the summer of 2020, but they did not have sexual intercourse until November 1, 2020, after E.F. had turned 18 years old. Martens testified that the first time he and E.F. "had sex" was under a full moon. Martens also testified that he received specialized training to research weather patterns because he was a licensed pilot and that his research indicated that there was a visible full moon on November 1, 2020, but not on April 12, 2020.

4

Martens attempted to introduce two pieces of evidence to support his assertion that the first time he engaged in sexual intercourse with E.F. occurred during a full moon: a text-message exchange between Martens and E.F. from May 2021 that referenced a full moon and a printout of the results from an internet search of the weather and moon phases on the different dates E.F. and Martens each alleged they first had sexual intercourse. The state objected to the admission of both pieces of evidence, and the district court sustained the objections.

The jury returned a guilty verdict at the conclusion of the trial. The district court sentenced Martens to 36 months in prison, stayed for 15 years, and ordered Martens to serve 270 days in county jail.

Martens appeals.

## ISSUES

I.    Did the district court err by denying Martens's motion to exclude his therapist's report and testimony based on therapist-client privilege?

II.    Did the district court abuse its discretion by excluding certain pieces of evidence Martens offered at trial?

## ANALYSIS

**I.    The district court did not err by denying Martens's motion to exclude his therapist's report and testimony because chapter 260E mandated the report and abrogated the therapist-client privilege as to the information required to be in the report.**

Martens argues that he is entitled to a new trial because the district court erred by denying his motion to exclude evidence of his disclosure to his therapist and the district court's error substantially affected the verdict. The crux of Martens's argument is that the

5

mandated-reporter statute does not apply when the maltreatment occurred within the three preceding years but the alleged victim of the maltreatment is 18 years old at the time of the report. Martens therefore asserts that all statements he made to the therapist were subject to therapist-client privilege.

Minnesota law recognizes a therapist-client privilege under which a therapist may not disclose information acquired in treating a client without the client's consent to the disclosure. Minn. Stat. § 595.02, subd. 1(g) (2022); *State v. Expose*, 872 N.W.2d 252, 257 (Minn. 2015). However, the mandated-reporter statute in chapter 260E partially abrogates this privilege, stating that a mandated reporter "who knows or has reason to believe a child is being maltreated . . . or has been maltreated[2] within the preceding three years shall immediately report the information" to law enforcement or an appropriate child-welfare agency. Minn. Stat. § 260E.06, subd. 1(a). Minn. Stat. § 260E.04 (2022) also provides:

> No evidence relating to the maltreatment of a child or to any prior incident of maltreatment involving any of the same persons accused of maltreatment shall be excluded in any proceeding arising out of the alleged maltreatment on the grounds of privilege set forth in section 595.02, subdivision 1, paragraph (a), (d), or (g).

Thus, while sections 260E.04 and 260E.06 allow a therapist to disclose a client's statements in a maltreatment report and subsequent legal proceedings, there is a limit on the disclosure the therapist is allowed to make. The supreme court clarified in *State v.*

---

[2] The term "child" is defined within the child-protection statutory scheme as "an individual under 18 years of age." Minn. Stat. § 260C.007, subd. 4 (2022). The definition of "maltreatment" includes "the subjection of a child . . . to any act that constitutes a violation of section . . . 609.344." Minn. Stat. § 260E.03, subds. 12(4), 20 (2022). Martens's alleged conduct falls under the definition of "maltreatment" for the purposes of this statute.

*Andring* that the mandated-reporter statute "abrogate[s] privilege only to the extent that it would permit evidentiary use of the information required to be contained in the maltreatment report." 342 N.W.2d 128, 133 (Minn. 1984) (interpreting a former version of sections 260E.04 and 260E.06 that contained a similar provision abrogating therapist-client privilege in cases of child neglect or abuse). The information required to be in a maltreatment report includes the identity of the victim and the person alleged to have maltreated the victim as well as "the nature and extent of the maltreatment." Minn. Stat. § 260E.09(b) (2022).

The district court and the state relied on these principles when addressing Martens's motion at the pretrial hearing. First, the district court asked counsel for the state whether it had any objection to the motion, and counsel responded, "Generally, no objection. . . . I think with respect to . . . the information that's required to be presented in a maltreatment report, that's not privileged. I think anything else beyond that is privileged." Counsel for Martens responded:

> The argument, I think, from the State is that the therapist is a mandated reporter, and I'd argue that to the extent the Minnesota statute on maltreatment reporting, 260E.06, provides that the . . . therapist is required to report alleged abuse that occurred three years prior to the date, because, in this particular case, Your Honor, the alleged victim was 18 when this report was made to the . . . therapist.
>
> . . . .
>
> I think the statute is designed to . . . prevent injury to children, but that it's overbroad in terms of saying that a therapist has to report behavior of their client that is past and . . . done with.

Martens's counsel then argued that section 260E.06 is unconstitutionally overbroad. The district court ultimately denied the motion and admitted the therapist's report and testimony at trial.

Under Martens's interpretation of the statute, the therapist's report was not mandatory because E.F. was an adult at the time of the report and the statutory provision abrogating the therapist-client privilege for evidentiary use of information contained in mandatory child-maltreatment reports did not apply.

### A. Because Martens forfeited his statutory-interpretation argument, we review for plain error.

As a threshold matter, we note that the parties disagree as to the standard of review that applies to our analysis. The state argues that Martens failed to raise his statutory-interpretation argument in district court and thus forfeited the issue on appeal. *See State v. Vasquez*, 912 N.W.2d 642, 649 (Minn. 2018) (stating that "[a] defendant's objection to the admission of evidence preserves review only for the stated basis for the objection or a basis apparent from the context of the objection"); *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (stating that appellate courts "generally will not decide issues which were not raised before the district court").

Martens counters that he did not forfeit his statutory-interpretation argument because his counsel cited the relevant provision of the mandated-reporter statute, noted that E.F. was 18 at the time the maltreatment report was submitted, and stated that "the statute is designed to . . . prevent injury to children." He contends that this is the same argument

he raises on appeal and that "[t]he context of the argument was apparent at the motion hearing." We are not persuaded.

Our review of the record shows that it was not apparent at the pretrial hearing that Martens raised a statutory-interpretation argument. Martens's counsel made no mention of statutory interpretation, did not question the meaning of the word "child" in the provision of the mandated-reporter statute that requires a report when "a *child* is being maltreated . . . or has been maltreated within the preceding three years," and did not argue that the therapist's report was not mandatory due to E.F.'s age at the time the therapist made the report. Minn. Stat. § 260E.06, subd. 1(a) (emphasis added). Furthermore, both the state and the district court addressed the constitutionality of the mandated-reporter statute in their responses to defense counsel, indicating that they understood Martens's argument to be a constitutional challenge rather than an issue of statutory interpretation. We therefore conclude that Martens forfeited the issue.

We may nevertheless review a forfeited allegation of error under the plain-error standard. *Pulczinski v. State*, 972 N.W.2d 347, 355-56 (Minn. 2022); *see also* Minn. R. Crim. P. 31.02 ("Plain error affecting a substantial right can be considered by the court . . . on appeal even if it was not brought to the [district] court's attention."). The plain-error standard requires the appellant "to establish (1) an error, (2) that is plain, and (3) that affects the [appellant's] substantial rights." *State v. Beaulieu*, 859 N.W.2d 275, 279 (Minn. 2015). If the first three prongs of the plain-error test are satisfied, "we may correct the error only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotations omitted). If we conclude that any one of the

plain-error prongs is not satisfied, we need not address the other prongs. *State v. Lilienthal*, 889 N.W.2d 780, 785 (Minn. 2017). Because we determine that the appellant has not established that the district court erred, we address only the first prong.

## B. The district court did not err.

Under the plain-error test, our first step is to determine whether an error occurred. Martens argues that his statements to his therapist did not trigger a requirement for the therapist to submit a maltreatment report because E.F. was not a child at the time of the disclosure. Because the therapist's maltreatment report was not mandatory, he argues, Minn. Stat. § 260E.04 and the rule in *Andring* did not abrogate the therapist-client privilege as to the statements he made in therapy.[3] Martens's claim of error thus requires us to interpret the meaning of the word "child" in the mandated-reporter statute to determine whether the therapist's report was mandatory.

Statutory interpretation is a question of law that we review de novo. *State v. Holl*, 966 N.W.2d 803, 808 (Minn. 2021). Our goal in interpreting a statute "is to effectuate the

---

[3] Martens argues in a footnote that some of the statements he made to his therapist and about which she testified were inadmissible because they exceeded the limits of *Andring* under any interpretation of the statute. He contends that the district court erred by allowing the therapist to testify about statements that were irrelevant to "the nature and extent of the maltreatment," Minn. Stat. § 260E.09(b), and were not "required to be contained in the maltreatment report," *Andring*, 342 N.W.2d at 133. Without deciding whether these statements exceeded the limits of *Andring*, we note that this portion of the therapist's testimony was brief, E.F.'s testimony regarding Martens's conduct far outweighed the therapist's testimony, and the jury's verdict would likely remain the same if this portion of the therapist's testimony was excluded. Thus, any error in the admission of these statements was harmless. *See State v. Courtney*, 696 N.W.2d 73, 79-80 (Minn. 2005) ("[A] conviction may stand so long as the erroneous admission of the evidence was harmless beyond a reasonable doubt. An error is harmless beyond a reasonable doubt if the guilty verdict . . . was surely unattributable to the error." (quotation and citation omitted)).

10

intent of the Legislature." *State v. Velisek*, 986 N.W.2d 696, 699 (Minn. 2023) (quotation omitted). The first step in our analysis "is to determine whether the statute's language is ambiguous." *State v. Mikell*, 960 N.W.2d 230, 238 (Minn. 2021) (quotation omitted). We will abide by the plain language of a statute when it is unambiguous. *Id.* If the statutory language "is subject to more than one reasonable interpretation," then it is ambiguous and we apply the canons of construction to interpret the statute's meaning. *Holl*, 966 N.W.2d at 808 (quotation omitted).

Turning to the language of the mandated-reporter statute, we must first determine whether it is ambiguous. *See Mikell*, 960 N.W.2d at 238. When interpreting the plain language of a statute, we "construe words and phrases in the statute according to rules of grammar and according to their common and approved usage." *Velisek*, 986 N.W.2d at 700 (quotations omitted). We also "read words and phrases in the context of the statute as a whole." *Mikell*, 960 N.W.2d at 239.

The statute provides that a mandated reporter "who knows or has reason to believe a child is being maltreated . . . or has been maltreated within the preceding three years shall immediately report the information" to law enforcement or an appropriate child welfare agency. Minn. Stat. § 260E.06, subd. 1(a). Both parties assert that section 260E.06 is unambiguous; however, they offer conflicting interpretations of the relevant timeframe to which the word "child" refers in the statute. Martens argues that the plain language of the statute mandates a report only when the alleged victim is a child at the time of the report, and he further argues that it does not mandate a report "with respect to an adult, even if there was maltreatment within three years, because the statute does not mention prior

11

maltreatment of someone who is an adult." Conversely, the state argues that "whether someone is a child for purposes of this statute is determined at the time of the maltreatment, not at the time of the report."

Both parties advance a reasonable interpretation of the mandated-reporter statute. Martens's interpretation is reasonable based on the context of chapter 260E as a whole. *See R.S. v. State*, 459 N.W.2d 680, 687 (Minn. 1990) (stating that the mandated-reporter statute "is to be interpreted by its plain language and in the context of the act and its purposes"). The statutory language throughout the chapter refers to the subject of a maltreatment report as a "child." *See, e.g.*, Minn. Stat. §§ 260E.10, subd. 2 (providing that mandated reporters "shall receive a summary of the disposition of any report made by that reporter . . . unless release would be detrimental to the best interests of the child"), .20, subd. 2(a) (requiring the local welfare agency to "conduct a face-to-face contact with the child reported to be maltreated and with the child's primary caregiver" after receiving a screened-in maltreatment report) (2022). This language suggests—consistent with Martens's argument—that the phrase "a child is being maltreated . . . or has been maltreated within the preceding three years" refers to a maltreatment victim who is a child at the time of the maltreatment disclosure.

The state's interpretation is also based on the purposes of chapter 260E: to protect children and promote child safety. *See* Minn. Stat. § 260E.01(a)(1) (2022) (enumerating the legislature's public-policy goals in promulgating chapter 260E). The legislature's concern about child protection and safety suggests that the mandated-reporter statute was designed to prevent future maltreatment of the victim *or other children*. This goal is best

12

effectuated by requiring mandated reporters to identify perpetrators of child maltreatment, regardless of whether the maltreatment victim has recently become an adult. We therefore conclude that the statute is ambiguous because it is subject to more than one reasonable interpretation. Because the statute is ambiguous, we turn to the canons of construction to discern its meaning. *See Holl*, 966 N.W.2d at 808.

One such canon is *in pari materia*, or the related-statutes canon, which "allows two statutes with common purposes and subject matter to be construed together to determine the meaning of ambiguous statutory language." *State v. Thonesavanh*, 904 N.W.2d 432, 437 (Minn. 2017) (quotation omitted). Section 260E.04 anticipates evidentiary use of mandated child-maltreatment reports in criminal proceedings. *See* Minn. Stat. §§ 260E.04 (abrogating evidentiary privilege "in any proceeding arising out of the alleged maltreatment"), .06, subd. 1(a) (enumerating the agencies to which a mandated report may be submitted, including the local police department or county sheriff), .12, subd. 2(a) (requiring the local welfare agency to notify the local police department or county sheriff upon receipt of a maltreatment report), .14, subd. 5(a) (stating that the local law-enforcement agency is responsible for investigating a maltreatment report that alleges violation of a criminal statute) (2022). When the mandated-reporter statute is construed together with the criminal statute prohibiting Martens's alleged conduct and the relevant statute of limitations, it is clear that the state's interpretation of the word "child" is correct.

Martens was charged under Minn. Stat. § 609.344, subd. 1(e), which prohibits an actor from engaging in sexual penetration with a person who is at least 16 but less than 18 years old when the actor is more than 48 months older than the complainant and in a

position of authority over the complainant. At the time Martens was charged, the relevant criminal-procedure statute allowed the state to file a complaint for violation of section 609.344 "within the later of nine years after the commission of the offense or three years after the offense was reported to law enforcement authorities."[4] Minn. Stat. § 628.26(e) (2018). This statute of limitations applied to enumerated criminal-sexual-conduct offenses "if the victim was under the age of 18 years *at the time the offense was committed*." *Id.* (emphasis added).

Given this statutory scheme, we conclude that the word "child" in the mandated-reporter statute refers to an individual who is a child at the time of the maltreatment, mirroring the language in the criminal statute of limitations that refers to a victim who was a child "at the time the [criminal-sexual-conduct] offense was committed." This is the most sensible interpretation of the word "child" within the context of both the mandated-reporter statute and the criminal-sexual-conduct statute. It would defy reason for the legislature to allow the state to prosecute a criminal-sexual-conduct case involving a child victim based on a maltreatment report yet also prohibit evidentiary use of that report.

Furthermore, we presume that "the legislature does not intend a result that is absurd, impossible of execution, or unreasonable" and "intends the entire statute to be effective." Minn. Stat. § 645.17(1), (2) (2022). The mandated-reporter statute requires a maltreatment report if a child "has been maltreated within the preceding three years." Minn. Stat. § 260E.06, subd. 1(a). Under Martens's interpretation of the statute, the three-year

---

[4] The legislature has since amended the statute to allow the state to file a complaint "at any time after the commission of the offense." Minn. Stat. § 628.26(e) (2022).

provision would not apply in the case of a mandated reporter who, on a maltreatment victim's 18th birthday, receives information that the victim had been maltreated every day for the three years leading up to their 18th birthday. Martens's interpretation of the word "child" would render the three-year provision ineffective and lead to unreasonable results.

We therefore conclude that the meaning of the word "child" in the mandated-reporter statute refers to a person who is a child at the time maltreatment occurs. Accordingly, we conclude that mandated reporters are required to submit a maltreatment report in the case of an adult who was maltreated as a child within the preceding three years. Under this interpretation of the mandated-reporter statute, the district court correctly determined that the therapist's report was mandatory, and Martens's argument fails the first prong of the plain-error test. We need not reach the other prongs of the test to conclude that the district court did not err by denying Martens's motion to exclude his therapist's report and testimony based on therapist-client privilege.

## II. The district court did not abuse its discretion by excluding two pieces of Martens's evidence.

Next, Martens argues that the district court abused its discretion by excluding two pieces of his evidence. We review evidentiary rulings for an abuse of discretion. *State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014). And we will reverse a district court's ruling "only if the exclusion of evidence was not harmless beyond a reasonable doubt." *State v. Zumberge*, 888 N.W.2d 688, 694 (Minn. 2017). "An error is not harmless beyond a reasonable doubt when there is a reasonable possibility that the error complained of may have contributed to the conviction." *Id.* (quotation omitted). Conversely, an error is

15

harmless if "a [reasonable] jury would have reached the same verdict" had the evidence been admitted. *State v. Olsen*, 824 N.W.2d 334, 340 (Minn. App. 2012) (alteration in original) (quoting *State v. Post*, 512 N.W.2d 99, 102 (Minn. 1994)), *rev. denied* (Minn. Feb. 27, 2013).

**A.** **The district court did not abuse its discretion by excluding evidence of a text-message exchange, and any error was harmless.**

The first piece of excluded evidence was a text-message exchange between Martens and E.F. from May 2021. In the exchange, Martens stated, "I'd really like to [have sex] under a full moon again with you. It was really 'romantic' the first time to only have moon light," to which E.F. replied, "Yeah good."

At trial, the state objected to the admission of the text-message exchange, arguing that the text messages were "cumulative information that they've had sex multiple times [and were] just more prejudicial material." The district court sustained the state's objection because of the ambiguity of the content and the length of time that passed between November 2020, when Martens alleged that his first sexual intercourse with E.F. occurred, and May 2021, when these text messages were exchanged. The district court stated that it was unclear whether Martens's use of the phrase "the first time" referred to the first time he and E.F. had sexual intercourse or the first time they had sexual intercourse under moonlight. Martens argues that the text-message exchange was relevant and admissible and that the district court made an impermissible credibility determination in excluding the exchange.

16

A piece of evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. Martens argues that this evidence is relevant because it shows that E.F. acknowledged "that there was a full moon the first time they had sex," which could have an impact on the jury's assessment of the parties' credibility with respect to the date of Martens's first sexual contact with E.F. However, the state argues—and Martens concedes—that there could be multiple interpretations of the meaning of the text messages. They could mean that Martens and E.F. acknowledged that the first time they "had sex" was under moonlight, or they could refer to a different instance in which they "had sex" under moonlight for the first time. Thus, any probative value of the text-message exchange as support for Martens's interpretation would likely be canceled out by its tendency to support the alternate interpretation. *See, e.g.*, *State v. Willis*, 364 N.W.2d 498, 500 (Minn. App. 1985) (affirming exclusion of evidence under Minn. R. Evid. 403 and suggesting that the evidence at issue did not foreclose the possibility that the appellant was not the assailant).

Even if the text messages have some probative value, we need not reverse the district court's decision, because the exclusion of this evidence was not harmful beyond a reasonable doubt—meaning that the admission of this evidence with its full damaging potential would not have changed the jury's verdict. *See Zumberge*, 888 N.W.2d at 694; *Olsen*, 824 N.W.2d at 340. The evidence of the text-message exchange would have had limited probative value about the date Martens first had sexual intercourse with E.F. because it was subject to an alternative interpretation and there was other evidence

17

supporting the state's position—E.F.'s testimony and the therapist's testimony and report. We are confident that a reasonable jury's verdict would have stayed the same in this case. We conclude that the district court did not abuse its discretion when excluding the evidence of the text-message exchange and that any error in its exclusion was harmless.

**B.      The district court did not abuse its discretion by excluding evidence of moon-phase and weather data, and any error was harmless.**

Finally, Martens argues that the district court abused its discretion by excluding documents about the weather and moon phases on the dates E.F. and Martens each allege they first had sexual intercourse. The state objected to this evidence at trial because it was not disclosed during discovery, and the district court sustained the objection, determining that Martens had violated Minn. R. Crim. P. 9.02, subd. 1.

First, we review de novo whether a discovery violation occurred. *State v. Palubicki*, 700 N.W.2d 476, 489 (Minn. 2005). Rule 9.02 requires the defendant, at the state's request, to disclose discovery documents before the omnibus hearing. Minn. R. Crim. P. 9.02, subd. 1(1). Although the state filed a timely discovery request in August 2021, the documents at issue were not disclosed and were first presented on the third day of trial. Therefore, the district court found that Martens's failure to disclose the documents constituted a discovery violation under rule 9.02.[5]

---

[5] Although the district court was concerned that Martens had failed to disclose the documents and the related defense, thus also violating Minn. R. Crim. P. 9.02, subd. 1(5), the reviewing court "may affirm the district court on any ground, including one not relied on by the district court." *State v. Fellegy*, 819 N.W.2d 700, 707 (Minn. App. 2012), *rev. denied* (Minn. Oct. 16, 2012).

Next, we review whether the district court abused its discretion when it excluded the evidence as a sanction for this discovery violation. *Palubicki*, 700 N.W.2d at 489; *State v. Lindsey*, 284 N.W.2d 368, 373 (Minn. 1979). To determine whether to impose a sanction for discovery violations, the district court should consider "(1) the reason why disclosure was not made; (2) the extent of prejudice to the opposing party; (3) the feasibility of rectifying that prejudice by a continuance; and (4) any other relevant factors." *Lindsey*, 284 N.W.2d at 373.

Martens states that he did not disclose the documents because the "disclosure would have violated privilege," but he does not develop this argument further. According to rule 9.02, the defendant is not required to disclose evidence that is "protected by attorney-client privilege or by state or federal constitutional guarantees." Minn. R. Crim. P. 9.02, subd. 1(4)(e). The attorney-client privilege protects against the disclosure of "confidential attorney-client communications." Minn. R. Evid. 502(e)(1). However, the attorney-client privilege does not protect the documents at issue here because they are not "confidential attorney-client communications," but rather printouts of the result of a publicly accessible internet search. We discern no valid reason for Martens's failure to disclose these documents prior to trial. This factor weighs in favor of the state.

The state was somewhat prejudiced by Martens's nondisclosure because if the state had known of the documents, it could have investigated the sources and prepared a rebuttal if necessary. This factor weighs slightly in favor of the state. *See, e.g.*, *Lindsey*, 284 N.W.2d at 373-74 (explaining that failure to disclose was prejudicial because the state could have taken steps to investigate had the disclosure occurred).

19

Martens argues that a continuance was not necessary because the state could have verified the information quickly by searching the internet. While verifying the source may have taken little time, investigating and preparing to respond to this evidence, if needed, may have taken longer. As this was a last-minute disclosure on the third day of trial, any continuance was not feasible. This factor also weighs slightly in favor of the state.

Finally, Martens argues that "exclusion [of this evidence] left the defense with no way to corroborate Martens' testimony on the key aspect of his case." But the excluded moon-phase and weather documents support only the assertion that there was a visible full moon on November 1, 2020, and no visible full moon on April 12, 2020; we do not see a need for supporting evidence to corroborate this assertion because the prosecution offered no contest to Martens's testimony on this point. Thus, this factor also weighs in favor of the state.

In sum, the factors set forth in *Lindsey* all weigh in favor of the state, and we conclude that the district court did not abuse its discretion when it excluded the moon-phase and weather documents based on Martens's discovery violation.

Even if the district court abused its discretion in excluding the moon-phase and weather documents, the exclusion of this evidence was not harmful beyond a reasonable doubt. *See Zumberge*, 888 N.W.2d at 694; *Olsen*, 824 N.W.2d at 340. As noted above, the documents would have corroborated Martens's testimony on only the point that there was a full moon on November 1, 2020, and no visible full moon on April 12, 2020, and there was ample evidence supporting the state's position—E.F.'s testimony as well as the therapist's testimony and report about Martens's disclosure to her. We are confident that

20

a reasonable jury's verdict would have stayed the same in this case. We conclude that the district court did not abuse its discretion when excluding the moon-phase and weather documents and that any error in their exclusion was harmless.

## DECISION

Because the mandated-reporter statute required the submission of a maltreatment report with respect to E.F., an adult who had been maltreated as a child within the preceding three years, the district court did not err in admitting the therapist's report and testimony. The district court also did not abuse its discretion in excluding certain pieces of Martens's evidence. Therefore, we affirm the decision of the district court.

**Affirmed.**