STATE of Minnesota, Respondent,

v.

**Travis Allan OLSEN, Appellant.**

**No. A12–0123.**

Court of Appeals of Minnesota.

Dec. 17, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and Mark Metz, Carver County Attorney, Michael D. Wentzell, Assistant County Attorney, Chaska, MN, for respondent.

Michael M. McDonald, Prior Lake, MN, for appellant.

Considered and decided by STONEBURNER, Presiding Judge; HUDSON, Judge; and LARKIN, Judge.

## OPINION

HUDSON, Judge.

On appeal from his conviction of first-degree criminal sexual conduct for having sexual intercourse with a victim under the age of 13, appellant argues the district court: (1) committed reversible error when it instructed the jury, "you are to make a decision on this"; and (2) abused its discretion by applying the rape-shield law to exclude evidence offered by appellant to show complainant's potential motive to fabricate the charge of sexual abuse. Because we conclude that the district court committed reversible error by instructing the jury that it must reach a decision, but did not abuse its discretion in excluding the evidence offered by appellant to show a motive to fabricate, we affirm in part, reverse in part, and remand for a new trial.

## FACTS

In January 2008, 12–year–old C.W., C.W.'s mother A.W., and C.W.'s younger brother moved into the upper level of a brick house in Chaska with appellant, who was 34 at the time. C.W. testified that one night, while A.W. was working an overnight shift, appellant invited C.W. to follow him into his bedroom, which she did, after which he kissed her, inserted his finger into her vagina, then had sexual inter-

course with her. C.W. testified that this occurred at least five times before appellant moved out of the house in April 2008.

C.W. testified that she continued to have sexual intercourse with appellant on weekends after he moved out of the Chaska house. According to C.W., appellant would pick her up at a gas station near her house and take her to hiking trails or rest stop areas where they would have sexual intercourse. C.W. testified that the last time she had sexual intercourse with appellant was September 27, 2008.

C.W. did not disclose this abuse until late 2010 when she told A.W., who did not report it to police. On March 12, 2011, C.W. went to an urgent care facility with A.W., primarily to address health concerns raised the prior evening when C.W.'s ex-boyfriend told her he had a sexually transmitted disease (STD). During her intake interview at the facility, C.W. disclosed that she had been sexually abused by appellant. Facility personnel reported this information to law enforcement, and appellant was eventually charged with first-degree criminal sexual conduct.

The jury trial commenced on September 13, 2011. Appellant brought a motion in limine to introduce evidence about C.W.'s clinic visit wherein she first reported the abuse. Specifically, appellant sought to introduce evidence that C.W. was ashamed and embarrassed about having potentially contracted an STD, and therefore was motivated to shift the "negative inferences" from herself to appellant by falsely accusing him of rape. The district court denied the motion, holding that the evidence was inadmissible under the rape-shield statute.

Jury instructions were read at 1:00 p.m. on Monday, September 19, 2011. The instructions included a near-verbatim recita-

tion of CRIMJIG 3.04.[1] The jury was also provided a written copy of the instructions when deliberations began at approximately 2:15 p.m. At 10:30 a.m. the next day, after 4.75 hours of deliberation, the jury sent a note to the district court stating: "We have reached an impasse, how should we continue." Outside the presence of the jury, the district court told both parties: "My general policy would be to bring [the jury] back in and explain to them I don't think that they deliberated long enough and that I would expect them to continue deliberation until they have reached a verdict." Defense counsel suggested asking the jury questions to determine whether they were deadlocked, but made no formal objection to the district court's proposed instruction. The district court reconvened the jury, and in the presence of both parties, stated:

> Members of the jury, I received your note from ... your foreperson. "We have reached an impasse, how should we continue." I have discussed that with counsel as well as Mr. Olsen. How should you continue? You should continue. I don't believe you have deliberated long enough and I'm going to send you back to continue your deliberations reminding you of the instructions I gave you. And I'll remind you once again you are the finders of fact. *There are twelve of you and you are to make a decision on this.* It's what I have discussed with counsel, and this is being done with their approval as well but it's ultimately my call. *Back to the room.*

If you go into the noon hour give us a half hour, forty-five minutes to get you something to eat.

(Emphasis added.)

On September 20, 2011, at 4:05 p.m.— roughly 5–1/2 hours after the jury indicated it was at an impasse and ten hours into deliberations—the jury returned a guilty verdict. Appellant was sentenced to serve 360 months in prison, with lifetime conditional release after confinement. This appeal follows.

## ISSUES

I. Did the district court's instruction to the jury that it must make a decision, after which it ordered the jury "back to the room," constitute the reversible error of coercing the jury to reach a unanimous verdict?

II. Did the district court abuse its discretion in excluding evidence of C.W.'s prior sexual conduct proffered to suggest a motive to fabricate her allegations?

## ANALYSIS

### I

▮ Appellant argues that the district court committed reversible error by coercing the jury into reaching a decision when it instructed the jury "you are to make a decision on this" in response to the jury's note that it had reached an impasse. It is reversible error to coerce a jury into reaching a unanimous verdict. *State v.*

---

1. CRIMJIG 3.04 states, in relevant part:

   In order for you to return a verdict, whether guilty or not guilty, each juror must agree with that verdict. Your verdict must be unanimous.

   You should discuss the case with one another, and deliberate with a view toward reaching agreement, if you can do so without violating your individual judgment. You should decide the case for yourself, but only after you have discussed the case with your fellow jurors and have carefully considered their views. You should not hesitate to reexamine your views and change your opinion if you become convinced they are erroneous, but you should not surrender your honest opinion simply because other jurors disagree or merely to reach a verdict.

   10 *Minnesota Practice*, CRIMJIG 3.04 (2006).

*Cox,* 820 N.W.2d 540, 550 (Minn.2012). "A court, therefore, can neither inform a jury that a case must be decided, nor allow the jury to believe that a 'deadlock' is not an available option." *State v. Jones,* 556 N.W.2d 903, 912 (Minn.1996) (citing *State v. Martin,* 297 Minn. 359, 211 N.W.2d 765 (1973)). It is not coercive to instruct a deadlocked jury to continue deliberating, so long as the district court does not "require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals." *State v. Kelley,* 517 N.W.2d 905, 909 (Minn.1994) (quotation omitted). We review the district court's instructions to the jury, taken as a whole, to determine whether they contained material misstatements of the law or coerced the jury toward a unanimous verdict. *Cox,* 820 N.W.2d at 550; *Jones,* 556 N.W.2d at 911.

■ The Minnesota Supreme Court in *Martin* held "that it is error to charge a jury that a case must at some time be decided." 297 Minn. at 368–69, 211 N.W.2d at 770. Instructing a jury that it must reach a verdict constitutes error for two reasons. First, it is a misstatement of the law, because a hung jury is a legitimate outcome to a trial. *Id.* at 367, 211 N.W.2d at 769. Second, the statement is coercive, because telling a jury that it must reach a verdict may cause jurors holding a minority viewpoint to surrender their honest beliefs in order to reach a unanimous verdict. *See id.* at 369, 211 N.W.2d at 771; *State v. Peterson,* 530 N.W.2d 843, 846 (Minn.App.1995). This instruction is particularly coercive when delivered to a jury that is at an impasse. *State v. Petrich,* 494 N.W.2d 298, 300 (Minn.App.1992), *review denied* (Minn. Feb. 23, 1993); *see also State v. Fidel,* 451 N.W.2d 350, 355 (Minn. App.1990), *review denied* (Minn. Apr. 13, 1990).

Respondent argues that neither *Martin* nor any other case has established a per se rule against instructing a jury at an impasse that it must reach a verdict; that instead we should look at the "totality of circumstances" to determine whether the jury was in fact coerced. Respondent points to language in *Jones* and *Cox* requiring us to look to the district court's instructions "taken as a whole." *See Jones,* 556 N.W.2d at 911; *Cox,* 820 N.W.2d at 550. While we agree that the district court's instructions should be reviewed as a whole, we do not believe that this approach is inconsistent with a per se rule against instructing a jury at an impasse that it must reach a verdict. Although *Martin* cited a number of objections to the jury charge delivered to the deadlocked jury, the decision established two clear rules—that it is error to charge the jury that the case must be decided, and that it is error to give an instruction that specifically encourages the minority to reconsider its position without encouraging the same of the majority. *Martin,* 297 Minn. at 368–69, 370, 372–73, 211 N.W.2d at 770, 772–73. Thus, respondent's reliance on *Jones,* in particular, is not persuasive. Moreover, *Jones* is factually distinguishable.

In *Jones,* the initial jury charge was misleading, and may have left the jury with the impression "that it was required to reach a unanimous verdict, guilty or not guilty." 556 N.W.2d at 911. But when the jury indicated it was deadlocked two days into deliberations, before the district court instructed the jury to continue deliberating, it read CRIMJIG 3.04 to the jury verbatim, part of which states "you should not surrender your honest opinion simply because other jurors disagree or merely to reach a verdict." *Id.* at 907, 907 n. 2, 911. This was the last instruction provided to the jury, and thus taken as a whole, the instructions did not communicate to the

jury that they were required to reach a verdict, which would have necessitated a new trial. *See id.* at 911.

■ We conclude that both *Martin* and *Jones* and their progeny stand for the proposition that, if the district court's instructions, taken as a whole, communicate to a jury at an impasse either that it must reach a verdict, or that deadlock is not an option, the district court has committed reversible error. *See State v. Buggs,* 581 N.W.2d 329, 338 (Minn.1998) (reaffirming the rule laid out in *Jones* that "[i]t is reversible error in Minnesota ... to inform a jury that a case must be decided"); *State v. Young,* 610 N.W.2d 361, 362–63 (Minn.App.2000) (instructing a jury split on one count that a hung jury cannot be the final outcome of the trial is reversible error), *review denied* (Minn. July 25, 2000); *Peterson,* 530 N.W.2d at 846 (instructing the jury to continue to deliberate until a unanimous verdict is reached is "prohibited"); *Petrich,* 494 N.W.2d at 300 (instructing a jury that it must reach a verdict is reversible error given the high likelihood of coercion when a jury is divided).

■ Here, appellant argues that the district court's statement that "[t]here are twelve of you and you are to make a decision on this" was the equivalent of telling the jury that it must reach a verdict. We agree. In *Martin,* the supreme court held that it is error to instruct the jury "that a case must at some time be decided." 297 Minn. at 368–69, 211 N.W.2d at 770. We see no material difference between the objectionable language cited in *Martin* and the language used here. Any uncertainty regarding the district court's intended meaning is resolved by looking at the district court's statement to both parties, outside the presence of the jury, upon receiving the jury note. "My general policy would be to bring [the jury] back in and explain to them I don't think that they deliberated long enough and that I would expect them to continue deliberation until they have reached a verdict." We conclude that the district court intended to communicate to the jury that it must reach a verdict, and that its instruction did in fact communicate that idea.

Respondent argues that other statements made by the district court ameliorated the effect of the objectionable statement. In particular, respondent points to the district court's statement, "[h]ow should you continue? You should continue. I don't believe you have deliberated long enough. . . ." Respondent argues that this statement "implicitly indicates that a deadlock is a potential outcome after an appropriate amount of deliberations has occurred." While this is one potential interpretation, the district court's statement could also be interpreted as effectively scolding the jury for not having worked hard enough to reach a verdict. Supporting this interpretation is the district court's directive ordering the jury "[b]ack to the room." Finally, any implicit meaning the jury may have taken from the district court's statement that the jury had not deliberated long enough was nullified by the direct statement, made two sentences later, that "you are to make a decision on this." *See Petrich,* 494 N.W.2d at 300 (concluding that the district court's statement that the jury must reach a verdict made immediately after rereading CRIMJIG 3.04 to an apparently deadlocked jury "nullified what came before").[2]

<hr/>

**2.** Respondent also suggests that, having deliberated for less than five hours, the jury was not genuinely deadlocked when it stated, "[w]e have reached an impasse," and there-

fore was not coerced by the district court's instruction. But we have never held that delivering a coercive instruction is not reversible error simply because the jury is not far

We conclude that the district court's instruction to a jury reporting an impasse and asking how it should proceed that it must make a decision, in the context of the instructions taken as a whole, constituted the reversible error of coercing the jury to reach a verdict.

## II

■ Appellant argues that the district court abused its discretion by excluding evidence of C.W.'s 2011 visit to the medical center to determine whether she had contracted a sexually transmitted disease from her former boyfriend. Appellant offered the evidence to demonstrate that C.W. had a motive to make false allegations of sexual abuse to make her appear more sympathetic, thereby deflecting the "criticism, negative comments, shame and embarrassment" that could result from her admitting she may have contracted an STD.

■ "Evidentiary rulings of the district court will not be overturned absent a clear abuse of discretion, even when constitutional rights are implicated." *State v. Pendleton,* 706 N.W.2d 500, 510 (Minn. 2005). We review the district court's exclusion of evidence under the harmless-error test. *State v. Quick,* 659 N.W.2d 701, 713 (Minn.2003). Under this test, we determine first whether the district court erred, and if so, whether that error was harmless. *State v. Post,* 512 N.W.2d 99, 102 (Minn.1994). An error in excluding evidence is harmless only if the reviewing court is "satisfied beyond a reasonable doubt that if the evidence had been admitted and the damaging potential of the evidence fully realized, a [reasonable] jury would have reached the same verdict." *Id.*

Evidence of a victim's prior sexual conduct generally "shall not be admitted nor shall any reference to such conduct be made in the presence of the jury." Minn. Stat. § 609.347, subd. 3 (2010) (rape-shield statute); Minn. R. Evid. 412(1). This evidence is only admissible "if the probative value of the evidence is not substantially outweighed by its inflammatory or prejudicial nature" and (1) if the defendant is asserting a consent defense, or (2) if the state's case "includes evidence of semen, pregnancy, or disease at the time of the incident." Minn.Stat. § 609.347, subd. 3; Minn. R. Evid. 412(1); *see also* Minn. R. Evid. 403.

■ Minnesota appellate courts have recognized that this evidence is also admissible "in all cases in which admission is constitutionally required by the defendant's right to due process, his right to confront his accusers, or his right to offer evidence in his own defense." *State v. Benedict,* 397 N.W.2d 337, 341 (Minn. 1986). The right to present a defense is not unlimited; the admission of evidence of a witness's prior sexual conduct is highly prejudicial and will not survive a rule 403 balancing test unless a special exception applies. *State v. Crims,* 540 N.W.2d 860, 865–68 (Minn.App.1995), *review denied* (Minn. Jan. 23, 1996). One such exception permits admission of "[a]ny evidence tending to establish a predisposition to fabricate a charge of rape . . . unless its potential for unfair prejudice outweighs its probative value." *State v. Kroshus,* 447 N.W.2d 203, 204 (Minn.App.1989) (citing *State v. Caswell,* 320 N.W.2d 417, 419 (Minn.1982)), *review denied* (Minn. Dec. 20, 1989); *see also State v. Carroll,* 639

into its deliberations. In *Young,* the district court committed reversible error by delivering a coercive instruction after only six hours of deliberations. 610 N.W.2d at 363. In both *Peterson* and *Petrich,* the coercive instruction was given eight hours into deliberations. *Peterson,* 530 N.W.2d at 845; *Petrich,* 494 N.W.2d at 300.

N.W.2d 623, 628 (Minn.App.2002), *review denied* (Minn. May 15, 2002).

The district court's determination that the evidence of C.W.'s prior sexual conduct would be more prejudicial than probative was not an abuse of discretion. This case involves neither a consent defense nor physical evidence of semen, pregnancy, or disease. The evidence offered by appellant is therefore not admissible under either rule 412 or section 609.347, subdivision 3. Moreover, the evidence shows no motive to fabricate, as C.W. never claimed that appellant was the source of the STD. Appellant's theory is purely speculative and demonstrates no propensity for C.W. "to lie or be biased or prejudiced, or harbor ulterior motives." *Jackson v. State,* 447 N.W.2d 430, 436 (Minn.App.1989).

## DECISION

The district court's instruction to the jury that it must make a decision constituted the reversible error of coercing the jury to reach a verdict, entitling appellant to a new trial. The district court did not abuse its discretion in excluding evidence of C.W.'s past sexual conduct offered by appellant to suggest a possible motive to fabricate charges of sexual abuse.

**Affirmed in part, reversed in part, and remanded for a new trial.**