# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-1564

State of Minnesota,
Respondent,

vs.

Jairo Missael Fernandez Sorto,
Appellant.

**Filed September 9, 2024**
**Affirmed**
**Frisch, Judge**

Stearns County District Court
File No. 73-CR-22-8482

Keith Ellison, Attorney General, Lisa Lodin, Keaon Dousti, Assistant Attorneys General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Cochran, Judge; and Frisch, Judge.

## SYLLABUS

1.      A district court's decision whether to allow a support animal to accompany a testifying witness at trial is reviewed for an abuse of discretion.

2.      In evaluating whether to allow a support animal to accompany a witness during their trial testimony, a district court may consider (1) the effect and helpfulness of the support animal to aid the testimony of the witness, (2) the risk of prejudice associated

with the use of the support animal during the witness's trial testimony, and (3) the ability of the district court to mitigate possible prejudice.

## OPINION

**FRISCH**, Judge

Following convictions for two counts of first-degree criminal sexual conduct, appellant argues that the district court abused its discretion by denying his motion to introduce evidence regarding the victim's previous sexual conduct, by allowing relationship evidence, and by permitting the victim to testify at trial accompanied by the county's support dog. Because we discern no abuse of discretion in the district court's evidentiary or trial-management rulings, we affirm.

## FACTS

In October 2022, S.F.-P. reported to a teacher at school, who then reported to police, that her father, appellant Jairo Missael Fernandez Sorto, had been sexually assaulting her since she was eight years old. Based on S.F.-P.'s allegations, respondent State of Minnesota charged Fernandez Sorto with three counts of first-degree criminal sexual conduct.

Before trial, the state moved in limine to offer relationship evidence and to exclude evidence of S.F.-P.'s previous sexual conduct. Fernandez Sorto moved to exclude relationship evidence and to offer evidence of S.F.-P.'s previous sexual conduct to prove that semen and a sexually transmitted infection detected in S.F.-P.'s examination originated from a source other than Fernandez Sorto. The state also moved to allow S.F.-P. to testify

at trial accompanied by a support dog belonging to the county.[1]  In its motion, the state included details of the dog's certification, training, and handler; articles about trauma for child witnesses; and articles about the use of support dogs in courtrooms, mediation, the workplace, and hospitals.  And the state included an email from a social worker, who expressed that S.F.-P. was experiencing anxiety and fear about testifying in Fernandez Sorto's presence.  Fernandez Sorto opposed allowing the dog to accompany S.F.-P. during her trial testimony because it would elicit improper sympathy from the jury and prejudice him.

The district court granted the state's motions in limine in part.  The district court found that an October 2021 incident where Fernandez Sorto hit S.F.-P. was admissible relationship evidence.  With regard to evidence of S.F.-P.'s previous sexual conduct, the district court found there was insufficient evidence that another individual was the source of the semen but ordered a hearing to consider the issue of the source of the sexually transmitted infection.  At that hearing, the district court ruled that Fernandez Sorto could offer evidence of an allegation of previous sexual conduct that S.F.-P. later recanted and could present evidence indicating that S.F.-P. tested positive for a sexually transmitted infection and that Fernandez Sorto did not.  Fernandez Sorto did not offer further evidence at the hearing about the source of the sexually transmitted infection.  The district court

---

[1] We refer to the dog as the county's support dog, as opposed to a facility dog, which is the term used by the parties.  The record reflects that the dog is owned and handled by the county, and the county initiated the use of the dog in the proceedings below.  We also note that we use the term "support dog" without deciding what term is most appropriately used when a dog accompanies a witness during their testimony.

granted the state's motion to allow S.F.-P. to testify at trial accompanied by the county's support dog.

At trial, the state offered testimony from 17 witnesses, including S.F.-P., medical and social work providers, Minnesota Bureau of Criminal Apprehension (BCA) scientists, S.F.-P.'s mother and friend, S.F.-P.'s teacher, and law-enforcement officers. Fernandez Sorto testified and denied the allegations of sexual contact. He also offered testimony from his wife and from an examiner at a child advocacy center.

At trial, S.F.-P.—who was then 15 years old—testified that Fernandez Sorto began sexually assaulting her when she was eight years old, shortly after S.F.-P. moved in with Fernandez Sorto. S.F.-P. detailed sexual abuse taking place at home, including that Fernandez Sorto digitally penetrated and touched her vagina, penetrated her vagina with his penis, touched her vagina with his mouth, and put his penis in her mouth and anus.

S.F.-P. testified about how Fernandez Sorto used cameras around the home to ensure that no one saw the abuse. Videos from these cameras were admitted at trial and depict Fernandez Sorto touching S.F.-P.'s butt, S.F.-P. touching Fernandez Sorto and laying on him, and S.F.-P. and Fernandez Sorto going into S.F.-P.'s closet, all of which were shown to the jury. S.F.-P. testified specifically about two instances of sexual abuse occurring on October 9 and 11, 2022. S.F.-P. testified that she told Fernandez Sorto she did not want to have sexual intercourse with him and that he told her not to tell anyone about the abuse. S.F.-P. also testified that Fernandez Sorto bought and directed her to take emergency contraceptives several times to prevent her from getting pregnant.

4

S.F.-P. testified that Fernandez Sorto had yelled at and hit her in October 2021. She testified that Fernandez Sorto had been upset with her because someone told him that S.F.-P. was communicating online with a man in his twenties. S.F.-P. originally told Fernandez Sorto that she was just talking to the man but eventually told Fernandez Sorto that she had performed oral sex on the man. Fernandez Sorto struck S.F.-P. and contacted police. S.F.-P. told police that she had performed oral sex on the man. S.F.-P. testified at trial that she had not done so and that she told police the story "[b]ecause of [her] dad." The jury also heard testimony from a police officer who investigated a mandated report that Fernandez Sorto hit S.F.-P. S.F.-P. told the officer that Fernandez Sorto hit her twice in the arm and once with a closed fist under her eye. Fernandez Sorto acknowledged to the officer that he hit S.F.-P.

The jury found Fernandez Sorto guilty of each charged offense. The district court entered convictions for two of the offenses and sentenced Fernandez Sorto to 216 months' imprisonment.

Fernandez Sorto appeals.

## ISSUES

I.    Did the district court abuse its discretion by excluding evidence of S.F.-P.'s previous sexual conduct?

II.   Did the district court abuse its discretion by admitting relationship evidence?

III.  Did the district court abuse its discretion by allowing the county's support dog to accompany S.F.-P. during her trial testimony?

IV.   Do the issues raised in Fernandez Sorto's pro se supplemental brief merit relief?

5

# ANALYSIS

**I.    The district court did not abuse its discretion by excluding evidence of S.F.-P.'s previous sexual conduct.**

Fernandez Sorto argues that the district court abused its discretion by denying in part his motion to present evidence about S.F.-P.'s alleged previous sexual conduct. We disagree.

"In a prosecution for acts of criminal sexual conduct . . . , evidence of the victim's previous sexual conduct shall not be admitted nor shall any reference to such conduct be made in the presence of the jury, except by court order . . . ." Minn. R. Evid. 412(1); *see also* Minn. Stat. § 609.347, subd. 3 (2022) (generally barring the admission of a victim's previous sexual conduct). Evidence of a victim's previous sexual conduct is "highly prejudicial," *State v. Olsen*, 824 N.W.2d 334, 340 (Minn. App. 2012), *rev. denied* (Minn. Feb. 27, 2013), and the prohibitions against the admission of such evidence "emphasize the general irrelevance of a victim's sexual history," *State v. Crims*, 540 N.W.2d 860, 867 (Minn. App. 1995), *rev. denied* (Minn. Jan. 23, 1996). Given these concerns, evidence of a victim's previous sexual conduct is admissible only if an exception to rule 412 applies and "if the probative value of the evidence is not substantially outweighed by its inflammatory or prejudicial nature." *Olsen*, 824 N.W.2d at 340 (quotation omitted); *see also* Minn. R. Evid. 412(1).

We will not overturn a district court's evidentiary ruling "absent a clear abuse of discretion." *State v. Pendleton*, 706 N.W.2d 500, 510 (Minn. 2005). "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against

logic and the facts in the record." *State v. Hallmark*, 927 N.W.2d 281, 291 (Minn. 2019) (quotation omitted). And even if we conclude that a district court abused its discretion in its evidentiary ruling, we will "reverse only if the exclusion of evidence was not harmless beyond a reasonable doubt." *State v. Zumberge*, 888 N.W.2d 688, 694 (Minn. 2017). "An error in excluding [defense] evidence is harmless only if the reviewing court is satisfied beyond a reasonable doubt that if the evidence had been admitted and the damaging potential of the evidence fully realized, a reasonable jury would have reached the same verdict." *Olsen*, 824 N.W.2d at 340 (quotation omitted).

Fernandez Sorto moved the district court to present evidence about alleged sexual contact between S.F.-P. and other men. Fernandez Sorto contends that the evidence was admissible under an exception to rule 412 because it was offered to show that the source of the semen and sexually transmitted infection discovered during S.F.-P.'s medical examination in October 2022 originated with someone other than Fernandez Sorto.

Rule 412 permits the admission of evidence of a victim's previous sexual conduct when "the prosecution's case includes evidence of semen, pregnancy or disease at the time of the incident" and the evidence sought to be admitted "show[s] the source of the semen, pregnancy or disease." Minn. R. Evid. 412(1)(B). The district court concluded that Fernandez Sorto's offer of proof was insufficient to support his assertion that S.F.-P.'s previous sexual conduct showed that another person was the source of semen. And regarding the evidence of the sexually transmitted infection, the district court concluded that "there's been nothing that's been brought before the court" that would "show that [S.F.-P.] engaged in any conduct with [another individual] that would result in a positive

7

urine [sexually-transmitted-infection] test." But the district court ruled that "in balancing the right of [Fernandez Sorto] to put on a defense," Fernandez Sorto could present evidence that S.F.-P. testified positive for the infection and Fernandez Sorto twice tested negative for the same infection.

The record supports the district court's conclusions that Fernandez Sorto offered insufficient proof of the alleged previous sexual conduct and that the evidence that Fernandez Sorto did offer did not show that the exception in rule 412(1)(B) applied. The record reflects that Fernandez Sorto's offer of proof about S.F.-P.'s previous sexual conduct consisted of his own assertions. And to the extent that Fernandez Sorto indicated that he would rely on a criminal complaint containing allegations of sexual conduct between S.F.-P. and another individual, that complaint related to criminal sexual conduct occurring between September and October 2021, a year before S.F.-P.'s positive test for a sexually transmitted infection and results indicating the presence of semen. The probative value of the evidence that Fernandez Sorto sought to present beyond the evidence permitted by the district court was not substantially outweighed by its prejudicial nature. *See Olsen*, 824 N.W.2d at 340 (stating that evidence of a witness's prior sexual conduct is assumed to be "highly prejudicial"); *Crims*, 540 N.W.2d at 868 (reasoning that, absent exceptional circumstances, the prejudicial impact of evidence of sexual activity with third persons outweighs its probative value under Minn. R. Evid. 403). Thus, the district court did not abuse its discretion by excluding evidence of S.F.-P.'s previous sexual conduct. *See Crims*, 540 N.W.2d at 868 (placing the burden on defendants to establish the relevance of statements regarding a victim's sexual history).

Even if we concluded that the district court abused its discretion in excluding this evidence, any such error was harmless. The evidence presented at trial showed that S.F.-P. tested positive for a sexually transmitted infection, Fernandez Sorto had tested negative for that infection, and Fernandez Sorto's wife had no reason to believe that she had that infection. This evidence undercut the state's theory of the case. We also observe that the record contains significant evidence of Fernandez Sorto's guilt, and we are not convinced that evidence regarding S.F.-P.'s previous sexual conduct would have led a reasonable jury to reach a different result. *See Olsen*, 824 N.W.2d at 340 ("An error in excluding [defense] evidence is harmless only if the reviewing court is satisfied beyond a reasonable doubt that if the evidence had been admitted and the damaging potential of the evidence fully realized, a reasonable jury would have reached the same verdict." (quotation omitted)).

## II. The district court did not abuse its discretion by admitting relationship evidence.

Fernandez Sorto next contends that the district court abused its discretion by admitting evidence that Fernandez Sorto hit S.F.-P. as relationship evidence under Minn. Stat. § 634.20 (2022), which provides that "[e]vidence of domestic conduct by the accused against the victim of domestic conduct, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice." Relationship evidence can be relevant because it "illuminates the history of the relationship between the victim and defendant," "help[s] prove motive," and "assist[s] the jury in assessing witness credibility." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010) (quotation omitted).

9

We review the district court's admission of relationship evidence for an abuse of discretion. *See State v. McCoy*, 682 N.W.2d 153, 161 (Minn. 2004). "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Hallmark*, 927 N.W.2d at 291 (quotation omitted).

In its pretrial ruling, the district court determined that evidence that Fernandez Sorto hit S.F.-P. was admissible as relationship evidence under Minn. Stat. § 634.20. *See* Minn. Stat. § 518B.01, subds. 2(a) (defining "domestic abuse" to include committing "physical harm, bodily injury, or assault" against a "family or household member"), 2(b)(2) (defining "family or household member" to include "parents and children") (2022). It found that the incident was supported by a preponderance of the evidence and "is a specific instance of domestic abuse that illuminates the relationship between [S.F.-P.] and [Fernandez Sorto] and the risk of unfair prejudice does not substantially outweigh the evidence's probative value." Fernandez Sorto argues that the district court abused its discretion because this evidence "did not provide context for the sexual abuse crimes," and the danger of unfair prejudice associated with the admission of this evidence substantially outweighed its probative value. We disagree for two reasons.

First, Fernandez Sorto's interpretation of Minn. Stat. § 634.20 is unreasonably narrow and inconsistent with our authorities stating that the probative value of relationship evidence is "bolstered" when it "helps to establish the relationship between the victim and the defendant or which places the event in context." *State v. Lindsey*, 755 N.W.2d 752, 756 (Minn. App. 2008) (quotation omitted), *rev. denied* (Minn. Oct. 29, 2008); *see also State v. Valentine*, 787 N.W.2d 630, 637 (Minn. App. 2010) (reasoning that a defendant's treatment

of his family is probative of how a defendant interacts with those close to him, including the victim), *rev. denied* (Minn. Nov. 16, 2010). We are not aware of a requirement, as Fernandez Sorto suggests, that the relationship evidence at issue must involve similar conduct as the charged offense to be probative. Evidence of domestic conduct, including evidence of domestic abuse, is admissible under section 634.20 provided the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice. The relationship evidence here is probative to illuminate the context of Fernandez Sorto and S.F.-P.'s relationship, which is permitted under Minnesota law. *See Lindsey*, 755 N.W.2d at 756. The evidence is also probative of S.F.-P.'s credibility, which was at issue because Fernandez Sorto's theory of the case centered on an assertion that S.F.-P. fabricated her allegations.

Second, the district court provided the jury with a cautionary instruction related to the proper use of relationship evidence before the jury heard about the incident. The instruction specified that the evidence was "being offered for the limited purpose of demonstrating the nature and the extent of the relationship between [Fernandez Sorto] and [S.F.-P.]" to assist the jury "in determining whether [Fernandez Sorto] committed those acts with which [he] is charged in the complaint." The district court instructed the jury that Fernandez Sorto was "not being tried for and may not be convicted of any behavior other than the charged offenses" and that the jury was "not to convict [Fernandez Sorto] on the basis of conduct described." This instruction mitigated the risk of the jury using the relationship evidence for an improper purpose. *See State v. Andersen*, 900 N.W.2d 438, 441-42 (Minn. App. 2017) (observing that "the district court's cautionary instructions

lessened any probability that the jury would rely improperly on relationship evidence"); *State v. Ware*, 856 N.W.2d 719, 729 (Minn. App. 2014) (stating that a district court's limiting instruction mitigates the risk that a jury may give undue weight to relationship evidence); *Pendleton*, 706 N.W.2d at 509 (stating that we presume that the jury followed the district court's instructions). We therefore conclude that the district court did not abuse its discretion in admitting the relationship evidence. *See McCoy*, 682 N.W.2d at 161.

## III. The district court did not abuse its discretion by allowing a support animal to accompany S.F.-P. during her trial testimony.

Fernandez Sorto next challenges the district court's decision to allow S.F.-P. to testify at trial accompanied by the county's support dog. He argues that the district court abused its discretion by allowing the dog to accompany S.F.-P. at trial because "the dog's helpfulness [to the testifying witness] is weighed against the potential prejudice to the defendant," the record did not support a determination that the support dog would be helpful, and the use of the support dog was otherwise prejudicial to him. We disagree.

The use of a support animal to accompany a witness during trial testimony is an issue of first impression in Minnesota. We first consider the standard of review. A district court has discretion to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence." Minn. R. Evid. 611(a). Pursuant to Minn. R. Evid. 611(a), a district court is authorized to exercise that discretion "so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Other jurisdictions have analyzed these factors in determining

12

whether to allow a support dog to accompany a testifying witness at trial. *See, e.g.*, *State v. Devon D.*, 138 A.3d 849, 867 (Conn. 2016) (holding that the determination of whether a support dog may accompany a testifying witness requires the trial court to "balance the extent to which the accommodation will help the witness to testify reliably and completely against any possible prejudice to the defendant's right to a fair trial" and consideration of "the availability of measures to mitigate any prejudice"); *State v. Dye*, 283 P.3d 1130, 1134 (Wash. Ct. App. 2012) (concluding that a trial court properly allowed a service dog to accompany a testifying witness where the trial court appropriately balanced the witness's disabilities and emotional trauma against potential prejudice), *aff'd*, 309 P.3d 1192 (Wash. 2013); *People v. Tohom*, 969 N.Y.S.2d 123, 136 (N.Y. App. Div. 2013) (concluding that a trial court did not abuse its discretion by allowing a therapy dog to accompany a testifying witness where it properly "balanced [the witness's] demonstrated need for [the dog] during her testimony against the potential prejudice to the defendant").

Consistent with these authorities, a district court's decision to allow a support animal to accompany a witness while testifying at trial falls within the district court's "broad discretion in controlling the manner in which testimony is received." *State v. Ross*, 451 N.W.2d. 231, 235-36 (Minn. App. 1990) (first citing Minn. R. Evid. 611(a); then citing *Manion v. Tweedy*, 100 N.W.2d 124, 130 (Minn. 1959)) (reviewing a district court's courtroom-management decisions for an abuse of discretion), *rev. denied* (Minn. Apr. 13, 1990). We therefore hold that a district court's decision whether to allow a support animal to accompany a testifying witness at trial is reviewed for an abuse of discretion.

13

The record reflects that the district court exercised reasonable control consistent with rule 611 when it permitted the county's support dog to accompany S.F.-P. during her trial testimony. The district court considered the impact and helpfulness of the support dog's presence to aid the veracity of S.F.-P.'s testimony. *See People v. Johnson*, 889 N.W.2d 513, 529 (Mich. Ct. App. 2016) (noting that a trial court employing its discretion to control the proceedings "should consider the facts and circumstances of each individual witness to determine whether the use of the support animal will be useful to the expeditious and effective ascertainment of the truth"). The district court reasoned that the county's support dog would help S.F.-P., noting her fear and anxiety about testifying, the ability of support dogs to reduce stress and enable truthful and complete testimony, and the circumstances of the case. And the district court's determination is supported by the record, which reflects that S.F.-P. was experiencing anxiety and fear about testifying in Fernandez Sorto's presence and includes articles discussing trauma experienced by child witnesses and the use of support animals in various settings including courtrooms.[2]

---

[2] We disagree with Fernandez Sorto's contention that a district court must make particularized findings about a testifying witness's trauma, or the specific helpfulness of or need for the support dog, to the extent Sorto makes such an argument. No such requirement exists in Minnesota, and this requirement has been rejected in other jurisdictions. *See People v. Chenault*, 175 Cal. Rptr. 3d 1, 14 (Cal. Dist. Ct. App. 2014) (reviewing a trial court's decision to allow a support dog during witness testimony and recognizing that express findings on that decision are preferred but concluding that implicit findings are adequate if the record is sufficient); *Devon D.*, 138 A.3d at 865, 867-68 (rejecting the conclusion that the trial court "was required to make an express finding that there was a need for this special procedure" (emphasis omitted) (quotation omitted)). We see no need for such a requirement, especially when, as here, we are satisfied that the district court considered the helpfulness of the county's support dog.

The district court next considered the risk of prejudice to Fernandez Sorto. The district court reasoned that the presence of the county's support dog in the courtroom was not unduly prejudicial and that the risk that the presence of the support dog might evoke additional sympathy was low given that S.F.-P. was likely already a sympathetic witness due to her age and the nature of her testimony. The district court observed that "the jurors would understand that testifying at a trial by its very nature is stressful, particularly for a child." *See Devon D.*, 138 A.3d at 864-65 (affirming the trial court's decision to allow a dog to accompany a testifying witness and stating that a trial court must balance "the extent that the special accommodation will aid the reliability of the witness' testimony against any possible prejudice to the defendant's right to a fair trial"). These conclusions are supported by the record as well. And Fernandez Sorto's argument on appeal that the presence of the county's support dog unfairly bolstered S.F.-P.'s credibility is unavailing because it is speculative and not supported by authority or the record.

Finally, the district court took careful measures to reduce possible prejudice to Fernandez Sorto associated with the presence of the support dog at trial. The district court ruled pretrial that Fernandez Sorto could question prospective jurors about the use of support dogs. The district court took additional measures to ensure that the support dog was not a distraction or visible to the jury during S.F.-P.'s testimony. For example, the district court issued a pretrial order requiring S.F.-P. and the county's support dog enter and exit the witness stand outside the presence of the jury and instructing the support dog's handler to take reasonable action to ensure the jury was not alerted to the support dog's presence. The district court also instructed the jury that the county's support dog

15

accompanied S.F.-P. during her testimony and that no inferences should be drawn based on the presence of the dog, stating:

> The decision to allow the use of the courthouse facility dog was one that I made, and that you may not speculate in any way as to why I made that decision.
>
> You must not draw any inference, favorably or negatively, from either side because of the dog's presence. You must not permit sympathy for any party to enter your considerations as you listen to the testimony. Each witness's testimony must be evaluated upon the instructions I give you and nothing else.

The record also reflects that the jury was not distracted by the support dog at trial. The record includes several comments from the parties and the district court outside the presence of the jury reflecting that the support dog was not visible to the jury during S.F.-P.'s testimony, that the support dog made no noise during trial, and that the support dog entered and exited the witness stand outside the presence of the jury.

We therefore hold that in evaluating whether to allow a support animal to accompany a witness during their trial testimony, a district court may consider (1) the effect and helpfulness of the support animal to aid the testimony of the witness, (2) the risk of prejudice associated with the use of the support animal during the witness's trial testimony, and (3) the ability of the district court to mitigate possible prejudice. Mitigation measures may include, for example, arrangements to make the presence of the animal unobtrusive and undisruptive during the proceedings and instructions to the jury to minimize prejudice. *See Chenault*, 175 Cal. Rptr. 3d at 12. We emphasize that

consideration of additional factors or mitigation measures may be appropriate given the circumstances of each case.

The record here reflects the district court's careful consideration of these factors. In deciding to allow S.F.-P. to testify accompanied by the county's support dog, the district court thoughtfully weighed the helpfulness of the support dog to S.F.-P.'s testimony against the potential prejudice to Fernandez Sorto. The district court undertook significant steps to guard against the risk of prejudice to Fernandez Sorto. And the district court's decision is supported by the record. Thus, we conclude that the district court acted within its discretion by allowing the county's support dog to accompany S.F.-P. during her trial testimony.

**IV.    Fernandez Sorto is not entitled to relief for the issues raised in his pro se supplemental brief.**

Fernandez Sorto argues in his pro se supplemental brief that there was insufficient evidence for his two convictions and that there was insufficient evidence to support an aggravated sentence on one of the counts.

The assertions set forth by a pro se appellant are forfeited if they are unsupported by argument or citation to legal authority. *State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2002). Factual assertions must also be supported by citations to the record. *See State v. Manley*, 664 N.W.2d 275, 286 (Minn. 2003) (granting a motion to strike and refusing to consider portions of a pro se brief that contained only argument and were not supported by the facts in the record). Fernandez Sorto's pro se brief contains no citations to the record

17

or to legal authority, and his assertions are therefore forfeited. And the issues raised do not demonstrate obvious prejudicial error on mere inspection.

## DECISION

We discern no abuse of discretion by the district court in its evidentiary rulings and conclude that the issues raised in Fernandez Sorto's pro se supplemental brief are forfeited. We hold that we review a district court's decision whether to allow a support animal to accompany a witness during trial testimony for an abuse of discretion. In evaluating whether to allow a support animal to accompany a witness during their trial testimony, a district court may consider (1) the effect and helpfulness of the support animal to aid the testimony of the witness, (2) the risk of prejudice associated with the use of the support animal during the witness's trial testimony, and (3) the ability of the district court to mitigate possible prejudice. Because the district court considered the effect and helpfulness of the county's support dog, the risk of prejudice to Fernandez Sorto, and mitigated possible prejudice through courtroom management and in its instructions to the jury, we discern no abuse of discretion by the district court by allowing the county's support dog to accompany S.F.-P. during her trial testimony.

**Affirmed.**